R. AUSTIN BACKUS et al., Plaintiffs, *v.* HUGH P. MACLAURY, Defendant.

Fourth Department, July 11, 1951.

*Borden H. Mills* and *S. J. Mauhs* for plaintiffs.

*Francis A. Niles* for defendant.

PIPER, J.   This is a submission of a controversy upon an agreed statement of facts.   The plaintiffs are copartners and maintain what is known as Butterfly Farms at Mexico, New York, where for many years past they have tested, bred, and maintained a herd of registered Holstein-Friesian dairy cattle. On November 17, 1947, the defendant purchased from plaintiffs a cow of that breed, which had been previously bred to a bull owned by plaintiffs in August, 1947, for the sum of $5,600 and she gave birth to a bull calf on May 11, 1948.

Some time prior to May 27, 1948, defendant employed one of the plaintiffs, R. Austin Backus, to conduct an auction sale of a herd of Holstein-Friesian cattle, including the bull calf.   About a week prior to the sale, which occurred on May 27, 1948, he inspected the bull calf and again inspected him on the day of the sale.   Plaintiffs purchased the calf at the sale for $5,000. On November 2, 1949, when the animal was nearly eighteen months old, plaintiffs notified defendant that he was sterile and demanded the return of the purchase price.

Other stipulated facts which we deem important to our determination are:

The minimum age at which it can first be safely determined whether or not a bull is fertile is approximately twelve months.

For six months prior to November 2, 1949, plaintiffs had employed Dr. Haubrich, a specialist in the treatment of sterility in dairy cattle, who treated the bull in question in an attempt to make him a fertile animal. The bull was also taken to the College of Agriculture at Cornell University where he was under treatment by two recognized specialists. All three of these professional men have agreed that the animal was born sterile and that his condition is incurable. Plaintiffs have expended the sum of $1,150.50 for the care and treatment of the animal. The value of the animal for veal at the time of purchase did not exceed $30 and for beef at the date of the submission, $200.

On these facts plaintiffs claim an express and implied warranty of fitness for breeding and ask for judgment in the sum of $6,150.50 with interest. Defendant claims that the rule of *caveat emptor* applies and that he should have judgment.

On the facts submitted, including the terms and conditions of sale, we find no express warranty of fitness for breeding purposes. The only provision as to breeding refers to females. The clause marked " Warranty " only states that " All animals are believed to be straight and right " and requires the purchaser to examine his purchase " before the close of the sale " and any claims to be " reported to the seller at once."

On the claim of implied warranty plaintiffs contend that it is the rule that where the seller knows the purpose for which a chattel is purchased, there is an implied warranty that the chattel is reasonably fit for the purpose and that this rule applies to the sale of an animal for breeding purposes. The difficulty with plaintiffs' contention is that they have left out an essential part of the rule, which is that the buyer relies upon the superior knowledge and skill of the seller. (74 A. L. R. 119, 120; Personal Property Law, § 96, subd. 1).

It appears in the submitted facts that plaintiffs were cattle breeders and at least one of the plaintiffs, R. Austin Backus, was " an experienced breeder of cattle ". It does not appear that defendant was skilled or possessed any knowledge on that subject or that plaintiffs relied in any way upon his skill or knowledge. On a submission, such as this, we are without power to draw inferences of fact. (*Feist* v. *Fifth Ave. Bank,* 280 N. Y. 189; *Title Guar. & Trust Co.* v. *Mortgage Comm.,* 271 N. Y. 302; *Matter of Gorman's Restaurant* v. *O'Connell,* 275 App. Div. 166.) It is therefore clear that in this case we cannot infer that the defendant had any superior knowledge or skill as to the breeding of cattle or that plaintiffs relied upon

defendant. Indeed the facts negative such an inference. as plaintiffs had sold the mother of the calf after she was bred and knew all the facts concerning both the mother and the sire of the animal.

We find no New York case directly in point. Several cases from other States are noted in 74 American Law Reports at pages 119–122. In *McQuaid* v. *Ross* (85 Wis. 492), it was held: " Where, upon the sale of a bull, both parties are alike destitute of knowledge or the means of forming an intelligent judgment as to his ability to generate his kind, and there is no misrepresentation or fraud and no express warranty, no warranty can be implied in that respect merely because a full price was paid for a bull for breeding purposes and the seller knew that he was being purchased for that purpose."

The same rule was followed in *Frederickson* v. *Hackney* (159 Minn. 234; see, also, *Thompson* v. *Miser,* 82 Ohio St. 289).

In most of the cases where the warranty has been implied there was reliance by the purchaser on the skill or knowledge of the seller (see *Petersen* v. *Dreher,* 196 Iowa 178; *Alford* v. *Kruse,* 183 Minn. 158, and *Hutchings* v. *Cola,* 42 Ill. App. 261).

We think in this case, where we cannot say that plaintiffs relied on the skill or superior knowledge of the defendant seller, there is no implied warranty of fitness for breeding purposes.

Plaintiffs urge that if they may not recover under an implied warranty they may recover on the theory of a mutual mistake of fact. While it is true here that neither party knew, and from the submitted facts, by which we are bound, could not have known on the day of sale that the animal was sterile, we do not think this is the type of contract which calls for rescission on that ground.

" Where the parties know that there is doubt in regard to a certain matter and contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain." (Restatement, Contracts, § 502, comment f, p. 964.)

The purchase was made at an auction sale and not by negotiation between the parties. At such a sale the price is determined by competitive bidding. Both parties knew that the minimum age at which the fertility of the animal could be " safely determined " was " approximately twelve months ". The plaintiffs assumed the chance of sterility " as one of the elements of the bargain."

The defendant is entitled to judgment.

All concur. Present — TAYLOR, P. J., McCURN, VAUGHAN, PIPER and WHEELER, JJ.

Submitted controversy determined in favor of defendant, without costs. [See *post,* p. 1043.]