OPINION OF THE COURT
Hancock, Jr., J.
The issues are whether petitioner, a tenured elementary school teacher, acquired tenure by estoppel as a special education high school teacher and, if so, whether her resignation submitted to respondents under the parties’ mistaken belief that she had not yet acquired tenure precludes her from regaining her teaching position. We conclude that petitioner acquired tenure by estoppel and that her resignation is without legal effect under the circumstances of this case. Accordingly, we reverse the order of the Appellate Division.
I
Petitioner Susan Gould achieved tenure under the Education Law in 1965 as a "common branch” elementary school teacher in a New York City District. In her application to teach in respondent Sewanhaka Central High School District, she indicated that she had been previously tenured. On September 1, 1986, she was appointed to a three-year probationary term as a special education teacher at a high school in respondent District. By letter dated February 24, 1989, six months before the expiration of her three-year probationary term, petitioner was advised that at the April 25, 1989 School Board meeting the Superintendent of Schools would recommend that her probationary appointment be terminated as of June 23, 1989. Petitioner requested and later received a statement of reasons for the Superintendent’s recommendation.
On April 12, 1989, petitioner met with the Superintendent to review the reasons for the denial of tenure. She asked "whether it was true that if she resigned, there would be nothing in her file” referring to the negative tenure recommendation. The Superintendent assured her that this was true and that she would have to submit her resignation with enough lead time for the Board to act upon it at its April 25 meeting. The next day, petitioner submitted her resignation for "personal reasons” effective June 30, 1989 and her resignation was accepted by the Board at its April 25, 1989 meeting.
When she submitted her resignation and when the Board accepted it, petitioner and respondents assumed that peti *450 tioner was resigning as a probationary teacher. None of the parties was aware that petitioner’s New York City tenure had entitled her to a reduction in her probationary term from three to two years by operation of Education Law § 3012 and that, therefore, she might already possess tenure by estoppel. By letter dated May 17, 1989 — after her resignation was accepted, but before its effective date — petitioner’s attorney notified the Board that petitioner had acquired tenure by estoppel. He asked it to rescind its acceptance of petitioner’s resignation. The Superintendent and the School Board took no action on this request.
Petitioner commenced a CPLR article 78 proceeding seeking reinstatement as a teacher on the grounds that the Superintendent and the School Board had acted arbitrarily and capriciously in accepting petitioner’s resignation and refusing to treat the resignation as a nullity. Supreme Court granted the petition and reinstated petitioner as a tenured teacher with back pay and benefits, reasoning that her resignation was of no legal effect because if "she had known the true facts, that she was already tenured, the resignation would have never been tendered”. The Appellate Division reversed and dismissed the proceeding, stating that "absent a showing of fraud, duress, coercion, or other affirmative misconduct on the part of school officials which renders a resignation involuntary, a resignation cannot be withdrawn once it has been accepted by school authorities” (Matter of Gould v Board of Educ., 184 AD2d 640, 641).
II
Education Law § 3012 (1) (a) states:
"Teachers * * * shall be appointed * * * for a probationary period of three years; provided, however, that in the case of a teacher who has been appointed on tenure in another school district within the state, * * * and who was not dismissed from such district or board * * * the probationary period shall not exceed two years” (emphasis added).
The language of the section is plain and the meaning unambiguous. Because of petitioner’s previous tenure in New York City, the acquired term of her probationary service had been reduced from three years to two years. The statute itself is self-executing. It makes no difference that her tenured status *451 was in a different tenure area in another school district or that she had left her tenured position more than 20 years before. Thus, after September 1, 1988, she was eligible to acquire tenure.
Tenure by estoppel "results when a school board fails to take the action required by law to grant or deny tenure and, with full knowledge and consent, permits a teacher to continue to teach beyond the expiration of [the] probationary term” (Matter of Lindsey v Board of Educ., 72 AD2d 185, 186). Here, petitioner’s required probationary period had unquestionably been reduced from three years to two years. Although the Superintendent and the Board had constructive knowledge of the facts pertaining to petitioner’s 1965 tenure from the information contained in her application, they were presumably not cognizant of the legal implications of continuing to employ petitioner beyond September 1, 1988 when her two years of probation ended. Respondents were, however, concededly aware of the operative facts — petitioner’s continuing service as a teacher in the District’s employ. It is of no legal significance that respondents did not know that petitioner’s continued employment would enable her to acquire tenure by estoppel (see, Lindsey, supra; Matter of Dwyer v Board of Educ., 61 AD2d 859).
Respondents’ principal contention is not that petitioner failed to acquire tenure by estoppel, but that her resignation was voluntary and, therefore, irrevocable. They argue that there is no claim of duress, coercion or fraud and that there is no other basis on which to nullify it. We disagree.
A tenured teacher has a protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of Education Law § 3020-a (see, Kinsella v Board of Educ., 378 F Supp 54, 59 [quoting Perry v Sindermann, 408 US 593, 601-602]). A teacher may, of course, relinquish her tenured rights in her position voluntarily by resigning (see, Matter of Girard v Board of Educ., 168 AD2d 183, 186; Matter of Roman v Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs., 98 AD2d 835, 836). A teacher’s resignation which has been obtained by fraud or which is the result of coercion or duress, however, does not represent a voluntary act and may be nullified (see, Matter of Marland v Ambach, 79 AD2d 48, affd on opn below 59 NY2d 711; see also, Matter of Di Giacomo v Ames, 72 AD2d 562). The question before us is whether a teacher should be *452 held to have voluntarily relinquished rights in a tenured position where the teacher, the Superintendent and the Board mistakenly believe that the teacher is resigning not from a tenured position but from an unprotected probationary position. We hold that, under the circumstances in this case, such a resignation is ineffective and may be rescinded.
Petitioner argues that her resignation is tantamount to a waiver of her protected tenure rights and to be effective must, under familiar principles, constitute a voluntary relinquishment of known rights (see, Werking v Amity Estates, 2 NY2d 43, 52; Matter of City of Rochester [Otis El. Co.], 208 NY 188, 197; S. & E. Motor Hire Corp. v New York Indem. Co., 255 NY 69, 73; see especially, Matter of Feinerman v Board of Coop. Educ. Servs., 48 NY2d 491, 497-498; Matter of Abramovich v Board of Educ., 46 NY2d 450, 455). It is a basic rule that a person may not knowingly relinquish rights that she does not knowingly possess (see, Rochester, supra ["knowledge, actual or constructive, of the existence of the right or condition alleged to have been waived is an essential prerequisite to its relinquishment” (id., at 197)]). Thus, petitioner concludes that because she was unaware of her tenured status and resigned in good faith, believing that she was only probationary, she cannot be held to have voluntarily waived rights she had unknowingly acquired in her position.
These established waiver principles have been applied in various contexts (see, e.g., Feinerman, supra, at 497-498 [waiver of teacher’s right to be appointed to probationary term in tenure-bearing position]; Abramovich, supra, at 455 [waiver of protection afforded tenured teacher under Education Law § 3020-a]; Werking, supra, at 52 [action to rescind tax deed, no waiver of tax collector’s failure to comply with statute]; Rochester, supra, at 197 [action to set aside condemnation award, no waiver of objection to conflict of interest of condemnation commissioners]; Miller v Greyvan Lines, 284 App Div 133, 136, affd 308 NY 853 [no waiver of plaintiff’s right to have goods stored in fire-proof warehouse]). These principles should apply with equal force to a resignation involving the relinquishment of a teacher’s tenure rights, statutorily protected entitlements for which the Legislature has evinced its special concern (see, e.g., Ricca v Board of Educ., 47 NY2d 385 ["(i)n order to effectuate these convergent purposes (fostering academic freedom and protection of competent teachers from capricious dismissal), it is necessary to construe the tenure system broadly in favor of the teacher” (id., at 391)]; Matter of Baer v *453 Nyquist, 34 NY2d 291, 299 ["The tenure statutes are intended to protect the teacher and not become a trap to those not guileful enough to avoid it”]). We need not decide, however, whether waiver principles alone support this result. For, under the particular facts here, there is an additional related factor for this decision: respondents and petitioner both proceeded under the same misapprehension.
Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission (see, Coffin v City of Brooklyn, 116 NY 159; Schmidt v Magnetic Head Corp., 97 AD2d 151, 159). The mutual mistake must exist at the time the contract is entered into and must be substantial. The idea is that the agreement as expressed, in some material respect, does not represent the "meeting of the minds” of the parties (see, Ryan v Boucher, 144 AD2d 144, 145; Brauer v Central Trust Co., 77 AD2d 239, 243, lv denied 52 NY2d 703; and see, Rosenblum v Manufacturers Trust Co., 270 NY 79, 84-85 [plaintiff may be entitled to have a court of equity rescind a contract even where the mistake is unilateral, not mutual, if failing to do so would result in unjust enrichment of defendant]; see generally, 13 Williston, Contracts §§ 1541, 1542, 1557, 1559, 1578 [3d ed 1970]).
The Superintendent advised petitioner at their meeting on April 12, 1989 that if she submitted her resignation in time for the Board to act on it by April 25, 1989, no information regarding the tenure denial would remain in her employment file. To avoid having such material kept in her file, petitioner submitted her resignation the following day and the Board accepted it at its April 25 meeting. The discussion between petitioner and Superintendent on April 12 and the subsequent actions of petitioner in submitting her resignation and the Board in accepting it were all premised on a mutual mistake of fact as to a critical element: that petitioner was only a probationary employee. Where, as here, such a misconception concerning a critical aspect of petitioner’s employment pervades the entire transaction, we conclude that the general principles of mutual mistake in the formation of contracts provide an additional related basis for treating petitioner’s resignation as a nullity.
Respondents argue, however, that petitioner’s resignation should be effective because they are blameless in the matter, there is no claim qf fraud or duress, and because they, like petitioner, were totally unaware that by holding over in her *454 position beyond September 1, 1988, petitioner was acquiring tenure by estoppel. But respondents’ good intentions do not matter in these circumstances where it is petitioner’s protected tenure rights which are at stake. As we have noted, even " 'good faith’ violations of the tenure system must be forbidden, lest the entire edifice crumble from the cumulative effect of numerous well-intentioned exceptions” (Ricca, supra, at 391).
Nor does respondents’ innocent unawareness of the facts alter the effect of the critical point: that the resignation was submitted and accepted under a fundamental misassumption as to the position petitioner was relinquishing. Respondents’ argument necessarily comes to this: as between petitioner and the Board, it was petitioner, rather than the Board, who had the responsibility of understanding the legal effect of Education Law § 3012 on her employment status. Respondents cite no authority for their proposition. The argument overlooks the fact that respondents gave nothing in return for petitioner’s resignation and that the only rights to be lost as a consequence of the mistake were those of petitioner. To accept respondents’ argument, we believe, would conflict with our Legislature’s firm policy of safeguarding teachers’ tenure rights (see, Ricca, supra, at 391; Baer, supra, at 299).
The cases cited by respondents’ are distinguishable (see, Girard, supra; Roman, supra; Matter of Cannon v Ulster County Bd. of Coop. Educ. Servs., 155 AD2d 846) in that in each instance the resigning or retiring teacher was sufficiently aware of the operative facts to make a knowing, intelligent and voluntary decision about submitting a resignation.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, reinstated.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Smith concur.
Order reversed, etc.