The INDEPENDENT ORDER OF
FORESTERS, Plaintiff,

v.

DONALDSON, LUFKIN & JENRETTE
INC., and Donaldson, Lufkin & Jenrette Securities Corp., Defendants.

No. 95 Civ. 2568 (DAB).

United States District Court,
S.D. New York.

March 13, 1996.

---

Edward C. Cerny, III, Michael J. McAllister, William E. Kelly, Lane & Mittendorf, New York City, for Plaintiff.

Michael R. Lazerwitz, Jean E. Kalicki, Judith R. Margolin, Brandt J. Goldstein, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, Jonathan I. Blackman, New York City, for Defendants.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff, The Independent Order of Foresters, brings this diversity action for breach of warranty, mutual mistake, breach of fiduciary duty and negligent and fraudulent misrepresentation, based on the sale of securities. Defendants, Donaldson, Lufkin & Jenrette, Inc. and Donaldson, Lufkin & Jenrette Securities Corp., have moved to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b).

### I. BACKGROUND

Plaintiff is a fraternal benefit society located in Ontario, Canada, that issues life, accident and health policies and annuities for and to its members. (Compl. ¶ 1.) Defendants are located in New York and engage in the business of buying and selling securities. (Compl. ¶¶ 2–3.)

Beginning in 1980, Plaintiff set out to acquire a portfolio of securities. (Compl. ¶ 6.) From 1980 until 1990, William E. Boothe ("Boothe"), was responsible, subject to the approval of Plaintiff's board of directors, for choosing appropriate securities. (Compl. ¶ 7.) From 1981 until 1989, Daniel Walsh ("Walsh"), employed by L.F. Rothschild & Co., Inc., advised Boothe. (Compl. ¶ 8.) In 1989 Walsh, then employed by the Defendants continued to advise Boothe and the Plaintiff until 1994. (Compl. ¶¶ 8–9.)

Defendants, on behalf of Plaintiff, bought collateralized mortgage obligations securities. (Compl. ¶¶ 11–19, 26.) Plaintiff alleges that sales brochures, prepared by Defendants, were sent to Plaintiff and that those brochures, containing purportedly false statements, induced it to buy the mortgage securities. Many of the transactions eventually lost money. (Id.) Plaintiff alleges that Defendants had a special knowledge about the instability of the securities traded, which Plaintiff did not have, and breached a duty to Plaintiff by inducing it to buy that type of security. Plaintiff makes no mention in its Complaint of any contracts between it and the Defendants to buy securities, or of any documents required to be filed with the SEC before a securities sale can go forward, such

as, offering circulars. Instead, Plaintiff brings its action based solely on the statements in the sales brochures, declaring them to be warranties.

Defendants now move for dismissal pursuant to Rule 12(b)(6) and 9(b).

## II.  DISCUSSION

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.,* 53 F.3d 465, 469 (1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Walker v. City of N.Y.,* 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957))), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

### A.  Choice of Law

Plaintiff claims that discovery is necessary to determine whether Ontario or New York law applies. Federal courts, when determining what law to apply, must follow the choice of law rules prevailing in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 494, 61 S.Ct. 1020, 1020–21, 85 L.Ed. 1477 (1941); *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 263 (2d Cir.1984). In New York, it is required that a party wishing to apply the law of a foreign state show how that law differs from the forum state's law. Failure to do so results in the application of New York law. *Loebig v. Larucci,* 572 F.2d 81, 85 (2d Cir.1978); *Richmond Lace Works, Inc. v. Epstein,* 31 F.R.D. 150, 152 (S.D.N.Y.1962); *Stein v. Siegel,* 50 A.D.2d 916, 377 N.Y.S.2d 580, 583 (N.Y.App. Div. 2d Dep't 1975). Furthermore, when the foreign state is a common law state, courts assume that the foreign law is the same as New York's law. *Loebig,* 572 F.2d at 85. Plaintiff, if it wished to invoke Ontario law, had an obligation to show how that law dif-

fered from New York law. Plaintiff is able to do so without discovery. Plaintiff failed to do so. Hence, the Court will apply New York law.

Even assuming Plaintiff made any type of showing of the applicability of Ontario law, the Court still finds that, under New York choice of law rules, New York has the greater interest in applying its laws. To determine which forum's laws should apply, New York applies the interests analysis test. *Istim, Inc. v. Chemical Bank,* 78 N.Y.2d 342, 347, 575 N.Y.S.2d 796, 798, 581 N.E.2d 1042 (1991); *Stein,* 377 N.Y.S.2d at 583. The Defendants are located in New York and the acts took place in New York, as Plaintiff concedes in its Complaint. Furthermore, there is no allegation that Ontario securities were traded by the Defendants, or that any trading took place in Ontario. Hence, New York has the greater interest in applying its laws to the acts that occurred here, and to the entities residing in its state.

### B.  Breach of Warranty

Plaintiff alleges five causes of action. The first is breach of warranty.

#### 1.  Breach of Express Warranty

Plaintiff alleges that certain statements made in the sales brochures were warranties. (Compl. ¶¶ 14–24.) A warranty is an affirmation of the quality or condition of the thing sold, which induces the buyer to buy the seller's product, the seller intending the inducement to have that effect. *Shippen v. Bowen,* 122 U.S. 575, 581, 7 S.Ct. 1283, 1285, 30 L.Ed. 1172 (1887); *Keenan v. D.H. Blair & Co.,* 838 F.Supp. 82, 90 (S.D.N.Y. 1993); 8 Williston on Contracts § 954, at 357. However, opinions, puffery and other similar language is not actionable as a breach of warranty. *Shippen,* 122 U.S. at 581, 7 S.Ct. at 1285; *Keenan,* 838 F.Supp. at 90; 8 Williston on Contracts § 954, at 357. The question to be determined, therefore, is "did the seller assume to assert a fact of which the buyer is ignorant, or did he merely express a judgment about a thing as to which they each may be expected to have an opinion." *Keenan,* 838 F.Supp. at 90 (quoting *Wedding v.*

*Duncan,* 310 Ky. 374, 220 S.W.2d 564 (1949)). Whether the statements alleged were actionable warranties or promotional puffery remains to be seen. Further, what effect the contracts had on these statements, if any, cannot be determined at this stage.[1] Accordingly, Plaintiff's First Cause of Action cannot be dismissed at this time.

### 2. Implied Warranties

■ When dealing with the sale of securities, there exists only three implied warranties: title, genuineness and validity. 8 Williston on Contracts § 954A, at 362–63; § 954C, at 378–79. Facts to support these types of warranties were not alleged here. Hence, the Court finds no facts to support a cause of action for implied warranties, and this cause of action is dismissed.

### C. Mutual Mistake

■ Next, Plaintiff alleges that there was a mutual mistake of fact, and requests rescission of the contract. A mutual mistake must exist at the time the contract is entered into and it must be substantial. *Gould v. Board of Educ.,* 81 N.Y.2d 446, 453, 599 N.Y.S.2d 787, 790, 616 N.E.2d 142 (1993). Furthermore, a rescission is available only where, "a mistake of both parties at the time [the] contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F.Supp. 976, 994 (S.D.N.Y.1989) (quoting *Gerard v. Almouli,* 746 F.2d 936, 938 & n. 2 (2d Cir. 1984) (quoting Restatement (Second) of Contracts § 152(1))) (parties predictions are not mistakes); *Backus v. MacLaury,* 278 A.D. 504, 106 N.Y.S.2d 401, 404 (N.Y.App.Div. 4th Dep't 1951). The purpose behind a claim of mutual mistake is to rescind an agreement between the parties that does not reflect a "meeting of the minds." *Id.; Leasco Corp. v. Taussig,* 473 F.2d 777, 781 (2d Cir.1972).

■ Plaintiff does not allege that it was mistaken as to the underlying facts of the parties' agreement, but that they were untrue. Furthermore, there is no allegation that Defendants were mistaken as to any part of the agreement. In fact, in their papers arguing against Plaintiff's theory, the Defendants assert that there is no mistake of fact regarding the underlying agreements. Hence, there are no facts alleged in the Complaint which could support this cause of action; it is dismissed.

### D. Negligent Misrepresentation

■ New York's blue sky laws, commonly known as the Martin Act, N.Y.Gen. Bus.Law, art. 23–A, §§ 352 *et seq.,* provides for the attorney general to regulate and enforce New York's securities laws. It is clearly established that there is no private right of action for claims covered by the Martin Act. *CPC Int'l Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 276; 519 N.Y.S.2d 804, 807, 514 N.E.2d 116 (1987); *Breakwaters Townhomes Ass'n of Buffalo, Inc. v. Breakwaters of Buffalo, Inc.,* 207 A.D.2d 963, 616 N.Y.S.2d 829, 829 (N.Y.App.Div. 4th Dep't 1994); *Rego Park Gardens Owners, Inc. v. Rego Park Gardens Assocs.,* 191 A.D.2d 621, 595 N.Y.S.2d 492 (N.Y.App.Div. 2d Dep't 1993); *Ansonia Tenants' Coalition, Inc. v. Ansonia Assocs.,* 151 Misc.2d 213, 573 N.Y.S.2d 211, 213 (N.Y.Sup. Ct.1991). Any claim that is covered by the Martin Act is therefore not actionable by a private party; otherwise, the party essentially would be permitted to bring a private action under the Martin Act. *Rego Park,* 595 N.Y.S.2d at 494; *Eagle Tenants Corp. v. Fishbein,* 182 A.D.2d 610, 582 N.Y.S.2d 218, 219 (N.Y.App.Div. 2d Dep't 1992); *Horn v. 440 E. 57th Co.,* 151 A.D.2d 112, 547 N.Y.S.2d 1, 5 (N.Y.App.Div. 1st Dep't 1989). It is established that actions for negligent misrepresentation and breach of fiduciary duty, without intentional deceit,[2] are covered by

---

1. If discovery reveals that there are contracts involved in the transactions that superseded the sales brochure, and those contracts disavow any warranties, then, as a matter or law, there are no express warranties. *CBS Inc. v. Ziff–Davis Publishing Co.,* 75 N.Y.2d 496, 503, 554 N.Y.S.2d 449, 453, 553 N.E.2d 997 (1990); *Caribbean At-*

*lantic Airlines v. Rolls–Royce Ltd.,* 39 A.D.2d 673, 331 N.Y.S.2d 921, 923 (N.Y.App.Div. 1st Dep't 1972).

2. Plaintiff does not allege in its cause of action for breach of a fiduciary duty any intentional

the Martin Act. *Rego Park*, 595 N.Y.S.2d at 494; *Eagle*, 582 N.Y.S.2d at 219; *Horn*, 547 N.Y.S.2d at 5. Plaintiff has brought both actions. Hence, these cause of action are hereby dismissed.

### E. Fraudulent Misrepresentation

Finally, Plaintiff alleges that the Defendants fraudulently misrepresented facts in the sales brochures given to the Plaintiff.

■ When evaluating a claim of fraud, the Court must first look to whether the claim has been pleaded sufficiently under Fed.R.Civ.P. 9(b). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." Fed.R.Civ.P. 9(b). "[A] complaint must adequately specify the statements it claims were false and misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y.1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)), *aff'd*, 23 F.3d 398 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 365, 130 L.Ed.2d 318 (1994); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Keenan*, 838 F.Supp. at 86; *Kubin v. Miller*, 801 F.Supp. 1101, 1117 (S.D.N.Y. 1992).

■ Plaintiff alleges there were several sales of securities made by Defendants on behalf of the Plaintiff. Before each one, Plaintiff received a sales brochure, describing the security. Plaintiff claims each brochure contained fraudulent statements, that the Defendants prepared and delivered those brochures on specific dates, and Plaintiff cites the fraudulent statement with a one sentence purported explanation of its falsity. (Compl. ¶ 26.)

■ The Defendants allege that scienter is not sufficiently pled in the Complaint. Although Rule 9(b) reads, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," cases have held that if scienter is an element of the action it must be sufficiently pled. It is recognized that alleging "great specificity" is not required, *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987) (citing *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985)), as it cannot be expected that a plaintiff can plead a defendant's state of mind. *Id.* However, plaintiff must plead circumstances which "give rise to a strong inference" that the defendants had knowledge of the fraudulent acts. *Id.; Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir.1989) (the complaint must plead facts indicating conscious behavior by the defendant); *Keenan*, 838 F.Supp. at 86 (same); *Schick v. Ernst & Young*, 141 F.R.D. 23, 26 (S.D.N.Y.1992) (same). There are no circumstances outlined which would indicate conscious behavior on the part of the Defendants to defraud the Plaintiff. There is no allegation that the Defendants profited from the Plaintiff's loss, or that someone in connection with the Defendants profited. In fact, Plaintiff did not lose money on every transaction and had several successful years of investments.

■ Even if Plaintiff had survived Rule 9(b), the Court finds that it has no action, as a matter of law, for fraud. In order to prove fraud, the Plaintiff must first plead and then show the following requirements: 1) that the Defendant made a representation of a material fact; 2) that the representation was false; 3) that the Defendants knew the representation was false (scienter); 4) that Plaintiff reasonably relied on the representation; and 5) that Plaintiff suffered damages. *Bank Leumi Trust Co. v. D'Evori Int'l Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909, 914–15 (N.Y.App.Div. 1st Dep't 1990); *Kelly v. L.L. Cool J.*, 145 F.R.D. at 39 n. 8; *Keenan*, 838 F.Supp. at 86.

■ The Court finds that, as a matter of law, the Plaintiff could not reasonably rely of any statements in a sale brochure. *See Harsco Corp. v. Bowden*, 1995 WL 152523, at *3 (S.D.N.Y. Apr. 5, 1995) (citing *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 469 (S.D.N.Y.1992)); *Keenan*, 838 F.Supp. at 87; *Phoenix Canada Oil Co. v.*

misconduct by the Defendants. (Compl. ¶¶ 31– 33.)

*Texaco Inc.*, 749 F.Supp. 525, 530–31 (S.D.N.Y.1990). A sales brochure, in and of itself, in a highly regulated industry where voluminous contracts detailing the securities at issue are created and filed with governmental agencies, such as the SEC, is not a document, on which someone trading securities worth millions of dollars, would reasonably rely.

### III.   CONCLUSION

As to the first cause of action, breach of warranty, Defendants' motion is DENIED at this time.

As to all other claims in the Complaint, Defendants' motion is GRANTED.

Defendants are ordered to answer the Complaint on or before April 2, 1996. The parties are directed to complete discovery on or before June 3, 1996. The parties are directed to appear in Courtroom 24B, 500 Pearl Street, New York, New York, for a status conference on June 7, 1996, at 10:30 a.m.

SO ORDERED.