■ JEROME M. EISENBERG, INC., Appellant, v MAURICE E. HALL, JR., et al., Respondents. [48 NYS3d 71]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered on or about August 28, 2015, which denied plaintiff's motion for summary judgment on its cause of action for breach of contract, affirmed, without costs. Appeal from order, same court and Justice, entered on or about August 28, 2015, which granted defendants Maurice E. Hall, Jr. and

Michael Hall Collections, Inc.'s motion for summary judgment to the extent of dismissing the fourth, fifth and sixth causes of action in the amended complaint, dismissed, without costs, as abandoned.

Jerome M. Eisenberg buys and sells antiquities. He is a principal of plaintiff Jerome M. Eisenberg, Inc. (Eisenberg, Inc.), and a Qualified Appraiser of the Appraisers Association of America. He is a self-proclaimed expert in classical antiquities with a doctorate in Roman, Egyptian, and Near Eastern Art.

Defendants Maurice E. Hall, Jr. (Hall), Michael Hall Collections, Inc., and Michael Hall Fine Arts, Inc. are art dealers that mainly deal in sixteenth to nineteenth century European art. Hall was a principal and sole shareholder of both Hall entities. Hall asserts that his expertise is in Renaissance art and that he is merely an "amateur collector" of classical antiquities. Eisenberg also stated that he did not believe Hall to be an expert in classical antiquities.

This appeal deals with plaintiff securing from defendants a bust and a statue that they believed to be ancient but were later revealed to be modern forgeries.

In February 2009, Eisenberg visited Hall's townhouse, out of which Hall operated his business, and secured[1] a marble head or bust of Faustina II, purported to be ancient Roman,[2] and a bronze warrior statue purported to be Etruscan or Roman era (the Etruscan Warrior).[3] Some months later plaintiff sold the Faustina Bust to the Mougins Museum of Classical Art in France. In or about September 2011, the Mougins Museum informed plaintiff that the Faustina Bust was a fake in that it was modern and not ancient. The museum sent plaintiff a report by Professor R.R.R. Smith of Oxford University and Susan Walker, a curator at the British Museum, who opined that the bust was likely modern.

---

1. The parties dispute as to whether there was a consignment or sale, whether the sale was "as is," and whether the invoices accurately reflected the underlying agreements.

2. Faustina II or Faustina the Younger was an Empress Consort of the Roman Empire from 7 March 161-175 CE. She was the daughter of Emperor Antoninus Pius and Faustina the Elder and became the wife of Emperor Marcus Aurelius. She died in 175 or 176 CE.

3. The Etruscan civilization is the modern name given to a powerful, wealthy and refined civilization of ancient Italy, in existence from 768 BC to 264 BC. It refers to an area corresponding to what is now Tuscany, western Umbria and northern Lazio. It ultimately assimilated into the Roman Republic beginning in the late fourth century BC with the Roman-Etruscan Wars.

In April 2011, plaintiff obtained from defendants the Etruscan Warrior and a bronze helmet. Plaintiff subsequently sent photographs of the statue to Dr. Michael Padgett at Princeton University, who opined that the piece had some stylistic inconsistencies. Plaintiff then submitted the statue to Oliver Bobin of the Centre d'Innovation et de Recherche pour l'Analyse et le Marquage for metallographic analysis. Bobin determined that the Etruscan Warrior was actually from the nineteenth or twentieth century and therefore was not ancient.

Plaintiff alleges that due to the "mutual mistake" of the parties regarding whether the items were ancient, it is entitled to summary judgment.

We agree with the motion court's decision that plaintiff is not entitled to summary judgment on its breach of contract claim pursuant to the doctrine of mutual mistake (*see generally Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]). Although the record reflects that both plaintiff and defendants mistakenly assumed at the time of the transactions that the items at issue were ancient, issues of fact exist as to whether plaintiff bore the risk of that mistake due to its "[c]onscious ignorance" of the items' authenticity (*P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d 200, 201 [1st Dept 1996] [internal quotation marks omitted and alteration in original]; *Richard L. Feigen & Co. v Weil*, 1992 NY Misc LEXIS 711, *10-12 [Sup Ct, NY County 1992], *affd for reasons stated below* 191 AD2d 278 [1st Dept 1993], *lv denied* 82 NY2d 652 [1993]; *Backus v MacLaury*, 278 App Div 504, 507 [4th Dept 1951], *lv denied* 278 App Div 1043 [4th Dept 1951]; *ACA Galleries, Inc. v Kinney*, 552 Fed Appx 24, 25 [2d Cir 2014]; Restatement [Second] of Contracts § 154, Comment *c*).

"Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission" because it "does not represent the 'meeting of the minds' of the parties" (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]). In order to justify rescission, "[t]he mutual mistake must exist at the time the contract is entered into and must be substantial" (*id.*).

The doctrine of mutual mistake "may not be invoked by a party to avoid the consequences of its own negligence" (*P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d at 201). Where a party "in the exercise of ordinary care, should have known or could easily have ascertained" the relevant fact (*id.* at 202)—here, whether the items were ancient—that party is deemed to have been "[c]onscious[ly] ignoran[t]" and barred from seeking rescission (*id.* at 201 [second and third alterations added]) or other

damages. This is true "[e]ven where a party must go beyond its own efforts in order to ascertain relevant facts (such as obtaining experts' reports)" (*id.* at 202).

The conscious ignorance exception applies only where a party is aware that his knowledge is limited but decides to contract anyway "in the hope that the facts accord with his wishes," thus assuming "[t]he risk of the existence of the doubtful fact . . . as one of the elements of the bargain" (*Backus v Mac-Laury*, 278 App Div at 507 [internal quotation marks omitted]; *accord ACA Galleries, Inc. v Kinney*, 552 Fed Appx at 25; *Feigen*, 1992 NY Misc LEXIS 711, *10-12; Restatement [Second] of Contracts § 154, Comment *c*).

We agree with the dissent that both plaintiff and defendants shared the mistaken belief that the Faustina Bust and the Etruscan Warrior were "ancient." Where we diverge is that we find that the record at this time does not support a finding that Eisenberg did not consciously ignore his uncertainty as to a crucial fact (*see Feigen*, 1992 NY Misc LEXIS 711, *12).

Questions exist as to whether Eisenberg genuinely believed the bust and statue to be ancient, or was aware that they might not be ancient but decided to assume this risk. Plaintiff presented evidence that Eisenberg is an expert on classical antiquities and a qualified appraiser who generally relies on his own expertise in evaluating works unless he is unsure of a piece's authenticity. He could thus have reasonably accepted that the items were ancient "based on [a] rational assessment of the source and style of work" (*Feigen*, 1992 NY Misc LEXIS 711, *15). Moreover, as to the Etruscan Warrior, Hall admittedly informed Eisenberg that he believed it to be from the private collection of renowned art collector J. Pierpont Morgan as signified by a painted red number. Eisenberg could have rationally relied on Morgan's reputation in addition to his own observations (*id.*).

However, plaintiff also admits in its complaint that several other items purchased from defendants later turned out to be inauthentic. This suggests that plaintiff should have been on notice that the items might not be ancient—at least by the time of the later Etruscan Warrior purchase.

The circumstances surrounding the transactions, including the visits to Hall's townhouse and bedroom, with little or no discussion of the provenance of the pieces, as well as plaintiff's admission that several other items purchased from defendants turned out to be inauthentic, cast plaintiff's professed certainty as to the authenticity of the items into doubt and could support a finding that plaintiff was on notice that the items might not

be ancient. Concur—Acosta, J.P., Mazzarelli, Feinman and Webber, JJ.

Andrias, J., dissents in a memorandum as follows: It is undisputed that both plaintiff and defendants shared the mistaken belief that the sculptures at issue were "ancient," and that the purchase prices were based on that assumption. Nevertheless, the majority affirms the denial of plaintiff's motion for summary judgment on its cause of action for breach of contract on the ground that "issues of fact exist as to whether plaintiff bore the risk of that mistake due to its '[c]onscious ignorance' of the items' authenticity." Because I believe that the requisite "meeting of the minds" is absent (*see County of Orange v Grier*, 30 AD3d 556, 556-557 [1st Dept 2006]) and that there is no evidence that plaintiff consciously ignored its "uncertain[ty] as to a crucial fact" (*Richard L. Feigen & Co. v Weil*, 1992 NY Misc LEXIS 711, *12 [Sup Ct, NY County 1992, Moskowitz, J.], *affd* 191 AD2d 278 [1st Dept 1993], *lv denied* 82 NY2d 652 [1993]), I respectfully dissent.

Defendants, art dealers specializing in sixteenth to nineteenth century European art, sold a marble bust of Faustina II (the Faustina Bust), thought to be ancient Roman, and a bronze warrior statue (the Etruscan Warrior), thought to be ancient Etruscan or Roman, to plaintiff, a buyer and seller of antiquities. Plaintiff's principal, Jerome M. Eisenberg, and defendant Maurice E. Hall, who negotiated the sales, both believed that the statues were authentic.* However, Eisenberg, a Qualified Appraiser of the Appraisers Association of America and a self-

---

* The parties disagree as to the particulars of the sales. Eisenberg claims that Hall offered the Faustina Bust for sale and that he took it on consignment in February 2009. In December 2009, plaintiff sold the bust to the Mougins Museum of Classical Art in France and paid defendants $75,000. In or about September 2011, the Mougins Museum informed plaintiff that the bust was a fake and returned it. Hall claims that Eisenberg initiated the outright purchase of the bust and a second marble head after noticing them in his townhouse, where defendants conducted their business. While Hall made no representations with respect to the bust, defendants admit that the bust was "assumed by both [Eisenberg and Hall] to be Roman."Eisenberg claims that in April 2011, Hall offered the Etruscan Warrior and a bronze helmet for sale, "presenting them as ancient objects." Eisenberg did not have much time to inspect them because Hall wanted immediate payment. On April 6, 2011, plaintiff purchased both items for $100,000. Handwritten notes on the invoice by plaintiff's office manager indicate $85,000 was apportioned to the Etruscan Warrior. Plaintiff later questioned the authenticity of the statue and, based on the opinions of two experts, concluded that it was not authentic. Hall claims that Eisenberg noticed the Etruscan Warrior and helmet in his townhouse and initiated the purchases. Hall made no representations as to the statue's authenticity, but told Eisenberg that he thought it was from the private collection of J. Pierpont Morgan, a renowned art col

proclaimed expert in classical antiquities with a doctorate in Roman, Egyptian, and Near Eastern Art, relied on his own expertise in purchasing the works, which were later revealed to be modern forgeries.

"Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission" because it "does not represent the 'meeting of the minds' of the parties" (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]; *see also Sunlight Funding Corp. v Singer*, 146 AD2d 625, 626 [2d Dept 1989]). However, a party's "negligence, or '[c]onscious ignorance,' regarding the [alleged mistake] bars rescission" (*P.K. Dev. v Elvem Dev. Corp.*, 226 AD2d 200, 201 [1st Dept 1996] [second alteration added]). Thus, under the conscious ignorance exception, mutual mistake does not apply where a party is aware that his knowledge is limited but decides to contract anyway, thereby assuming the risk of his mistake (*see ACA Galleries, Inc. v Kinney*, 928 F Supp 2d 699, 701-702 [SD NY 2013], *affd* 552 Fed Appx 24 [2d Cir 2014]). However, "if a party does not make a conscious decision to proceed in the face of insufficient information, the conscious ignorance exception to the mutual mistake doctrine does not apply" (*Feigen*, 1992 NY Misc LEXIS 711 at *11-12 [internal quotation marks omitted]).

The majority finds that "[t]he circumstances surrounding the transactions, including the visits to Hall's townhouse and bedroom, with little or no discussion of the provenance of the pieces, as well as plaintiff's admission that several other items purchased from defendants turned out to be inauthentic, cast plaintiff's professed certainty as to the authenticity of the items into doubt and could support a finding that plaintiff was on notice that the items might not be ancient." I do not agree.

The record establishes that defendants presented the Faustina Bust and Etruscan Warrior to plaintiff as ancient items. As the majority concedes, Eisenberg could have reasonably accepted that the items were ancient based on his own expertise and a "rational assessment of the source and style of work" (*Feigen*, 1992 NY Misc LEXIS 711, *15). Moreover, as to the Etruscan Warrior, Hall admittedly informed Eisenberg that he believed it to be from the private collection of renowned art collector J. Pierpont Morgan. As the majority acknowledges, "Eisenberg could have rationally relied on Morgan's reputation

lector, as signified by a painted red number. Hall believed the statue was Roman; Eisenberg insisted it was Etruscan. There was no discussion of the price breakdown and the notations on the invoice were not an accurate reflection of the agreement.

in addition to his own observations." While Hall and Eisenberg disagreed whether that statue was Etruscan or Roman, the dispositive fact is that they both believed it to be ancient, and that there was a rational basis for that belief.

There is no evidence demonstrating that Eisenberg did not genuinely believe that the items were ancient or that he was "uncertain as to a crucial fact" regarding their authenticity following his inspections (*Feigen*, 1992 NY Misc Lexis 711, *12). That plaintiff purchased several items in the past that were later determined to be fakes does not establish conscious disregard of any facts pointing to the inauthenticity of the sculptures at issue. Plaintiff's money was refunded in each of those cases and the particular circumstances of those transactions and the discovery of the fakes is unclear. Moreover, given that those transactions were rescinded and did not result in a financial loss, they should not form the basis of imposing a heightened duty of inquiry on plaintiff.

Whether Hall affirmatively offered the items for sale or made any affirmative representations is of no consequence. Plaintiff does not premise its breach of contract claim on the breach of a contractual warranty. Rather, the claim is based on the premise that there was no meeting of the minds because the parties were mutually mistaken about a material fact. The basis of the bargain and the statues' value lay in the items being ancient, which proved to be untrue.

Even if Eisenberg is the more credentialed expert in classical antiquities among the two, Hall is an established dealer in fine arts who sold those items. In any event, "there is no authority for the proposition . . . that in a contract between an expert and non-expert, rescission based on mutual mistake is unavailable to the expert" (*Feigen*, 1992 Misc LEXIS 711, *13). In *Feigen*, the seller of a drawing that both parties assumed to be a Matisse, but which turned out to be a forgery, argued that the buyer, an art dealer, acted with conscious ignorance because it failed to authenticate the drawing before purchasing it (*id.* at *6). Justice Moskowitz, then sitting as a trial judge, held that the conscious ignorance exception to the mutual mistake doctrine did not apply because "both parties, far from assuming any risk, mistakenly assumed the facts underlying the transaction" (*id.* at *10). In so ruling, Justice Moskowitz rejected the defendant's argument that the plaintiff had a duty to authenticate the drawing because it had more expertise, stating that the plaintiff "was not asked to nor did it have any substantive or legal obligation to go beyond a 'cursory inquiry' as to its authenticity" (*id.* at *15). This Court affirmed for the reasons stated by Justice Moskowitz (191 AD2d 278 [1993]).

Following *Feigen*, in *Uptown Gallery, Inc. v Doniger* (1993 NY Misc LEXIS 661 [Sup Ct, NY County 1993]), the court rejected the defendant's conscious ignorance claim, stating that "[t]his is not a case where the parties were uncertain as to a crucial fact, consciously ignored it and despite this uncertainty contracted. To the contrary, both parties entered into the contract based on the assumption that the painting being purchased was an authentic Bernard Buffet" (*id.* at \*3-4). The court rejected the defendant's argument that it would be more reasonable under the circumstances to place the risk of loss on the buyer, stating "[t]here is no reason why defendant should be entitled to a windfall based on its sale of a painting which was not what either party believed it to be. The painting was clearly not worth the contract price and there is no basis for allowing defendant to receive much more for the painting than what it is worth" (*id.* at \*4). This rationale is equally applicable to the facts in this case.

*P.K. Dev. v Elvem Dev. Corp.* (226 AD2d 200 [1996]), cited by the majority, is inapposite. There, the defendant, a corporate seller of a residential cooperative unit, and the plaintiff, the buyer, both believed that the unit was occupied (*id.* at 201). When the seller discovered that the unit was unoccupied, which made it more valuable, it refused to close (*id.*). The buyer sued for specific performance and breach of contract and the trial court granted the seller summary judgment rescinding the contract based on mutual mistake (*id.*). This Court reversed and granted the buyer summary judgment, holding that the seller's ignorance of the unit's vacancy resulted from its own negligence because it could have easily learned of the vacancy by exercising ordinary care as an owner of the unit (*id.* at 201-202). Here, defendant, not plaintiff, was the owner of the sculptures and it has not been shown that plaintiff, which relied on its principal's expertise and statements of Hall, could have easily ascertained that the sculptures were forgeries (*see Gitelson v Quinn*, 118 AD3d 403, 404 [1st Dept 2014] [" 'Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible' "], quoting *Da Silva v Musso*, 53 NY2d 543, 551 [1981]).

Nor does *ACA Galleries, Inc. v Kinney* (928 F Supp 2d 699 [2013]) warrant a different result. There, the buyer, who had reservations, decided not to have the item inspected, despite the seller shipping it to him for that purpose (928 F Supp 2d at 702). Here, there is no showing that plaintiff recognized the need to have the sculptures authenticated by an outside expert but nevertheless chose not to do so.

Accordingly, I would grant plaintiff summary judgment rescinding the sales.