Cordaro v AdvantageCare Physicians, P.C. (2022 NY Slip Op 05267)

Cordaro v AdvantageCare Physicians, P.C.

2022 NY Slip Op 05267

Decided on September 27, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 27, 2022

Before: Webber, J.P., Kern, Singh, Moulton, Shulman, JJ. 

Index No. 656390/18 Appeal No. 16252 Case No. 2021-00453, 2021-00465 

[*1]Mario N. Cordaro, D.O., et al., Plaintiffs-Appellants,
v
AdvantageCare Physicians, P.C., Defendant-Respondent.

Nolan Heller Kauffman LLP, Albany (Justin A. Heller of counsel), for appellants.
Debevoise & Plimpton LLP, New York (Jared I. Kagan of counsel), for respondent.

Judgment, Supreme Court, New York County (James E. d'Auguste, J.), entered September 22, 2020, dismissing the amended complaint with prejudice pursuant to an order, same court and Justice, entered on or about September 17, 2020, which granted defendant's motion to dismiss pursuant to CPLR 3211(a)(1) and (7), unanimously modified, on the law, the judgment vacated, and the motion denied as to all causes of action except unjust enrichment, and otherwise affirmed, without costs.
Plaintiffs are physicians whose former malpractice insurer was nonparty Medical Liability Mutual Insurance Company (MLMIC). All plaintiffs signed forms designating their employer at the time as their policy administrator. Each form stated that "[t]he Policy Administrator is the agent of all Insureds herein for the paying of Premium[s], requesting changes in the policy, including cancellation thereof[,] and for receiving dividends and any return Premiums when due." In late 2012, plaintiffs' former employers merged into defendant. Plaintiffs allege that, after merger, defendant became plaintiffs' employer and policy administrator. As required by the parties' employment agreement, defendant subsequently paid plaintiffs' malpractice insurance premiums.
In June 2018, MLMIC submitted a plan to the State Department of Financial Services, seeking to demutualize and be acquired by a subsidiary of Berkshire Hathaway. The same month, defendant received a policyholder information statement from MLMIC. Rather than forwarding that document to plaintiffs, defendant sent them a letter and a consent form to have distributions paid to their policy administrator. The letter stated that plaintiffs were required to sign the consent form and, if they did not do so and were paid directly, would need to forward payments to defendant.
Shortly afterwards, defendant sent plaintiffs a notice from MLMIC. This notice informed plaintiffs that they could appoint policy administrators to receive distributions, and that the policyholder information statement was available on MLMIC's website. On August 3, 2018, defendant sent plaintiffs an email repeating that the consent form was "needed in connection with [MLMIC's] proposed transaction with Berkshire Hathaway."
Plaintiffs signed the consent forms. Plaintiffs allege that they were not required to sign the consent form or to forward money to the defendant, and that they did not learn of this until after signing the consent form. After the Department of Financial Services approved MLMIC's transaction, plaintiffs demanded that defendant turn over their shares of the cash consideration. Defendant refused. Plaintiffs sued.
Supreme Court should not have dismissed the breach of fiduciary duty cause of action. The policy administrator forms, which say defendant is plaintiffs' agent, establish a fiduciary relationship between the parties (see Schulhof v Jacobs, 157 AD3d 647, 648 [1st Dept 2018]; see also Riggs v Brooklyn Hosp. Ctr., 207 AD3d 405 [1st Dept 2022][*2][the defendant's "conduct in holding itself out as [the] plaintiff's agent with respect to the policy" might estop "it from denying the existence of a fiduciary or confidential relationship"]). Moreover, defendant had the power to request changes to plaintiffs' policies and to cancel them, so it had the power to affect their legal relations (compare Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 164 [1993] [finding that the plaintiff was not the defendant's agent because, among other things, it "had no power to affect any legal relations" of the defendant]).
Plaintiffs allege that the forms by which they authorized MLMIC to distribute their demutualization proceeds to defendant are invalid because defendant obtained them in breach of its fiduciary duty, by fraud, or due to mutual mistake. If these forms are invalid, then the demutualization proceeds belong to plaintiffs (see Columbia Mem. Hosp. v Hinds, 38 NY3d 253 [2022]).
Transactions between a fiduciary and beneficiary are voidable if the fiduciary acts in its own interest and does not fully disclose all material facts (Blue Chip Emerald v Allied Partners, 299 AD2d 278, 278-280 [1st Dept 2002] [internal quotation marks omitted]).[FN1] Defendant is alleged not only to have withheld the policyholder information statement from plaintiffs, but to have significantly misrepresented their contents for its own gain. These allegations, which are not conclusively refuted by the documentary evidence, are sufficient to survive a motion to dismiss.
Fraud is another basis for rescinding the consent forms (see McFarland v Salerno, 40 AD3d 514, 515 [1st Dept 2007]; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC, 19 AD3d 273, 275 [1st Dept 2005]). Plaintiffs also properly allege constructive fraud, because they were owed a fiduciary duty by defendant and so were "warranted to . . . relax the care and vigilance they would ordinarily exercise in the circumstances" (People v Credit Suisse Sec. [USA] LLC, 31 NY3d 622, 640 n 2 [2018] [Feinman, J., concurring] [internal quotation marks and brackets omitted]).
Defendant contends that plaintiffs' fraud claims fail due to lack of justifiable reliance. However, a fiduciary relationship is not at arm's length, and a "principal is entitled to rely on the agent's representations and [its] complete, undivided loyalty" (TPL Assoc. v Helmsley-Spear, Inc., 146 AD2d 468, 470-471 [1st Dept 1989] [internal quotation marks omitted]; see also Braddock v Braddock, 60 AD3d 84, 94 [1st Dept 2009] ["[T]he fiduciary relationship between the parties, with its concomitant mutual obligation to act in good faith, makes [the plaintiff's] reliance on [the defendant's] assurances all the more reasonable"]). In any event, as it generally is, justifiable reliance here is an issue of fact (see Braddock, 60 AD3d at 88; see also Kimmell v Schaeffer, 89 NY2d 257, 264 [1996]). Riggs v Brooklyn Hosp. Ctr. (207 AD3d at 405) does not require a different outcome. The policy administrator [*3]in Riggs was the plaintiff, not the defendant,and the fiduciary or confidential relationship between the parties "ended . . . more than three years before the communications at issue" (id. at 407). Finally, unlike the documents that defendant sent to plaintiffs, the assignment agreement in Riggs recited the relevant facts regarding the MLMIC demutualization (id. at 406).
Defendant contends that the fraud claims fail due to lack of scienter. Scienter is not an element of constructive fraud or negligent misrepresentation (see Credit Suisse, 31 NY3d at 640 n 2 [concurrence] [citing authority that constructive fraud does not require scienter]; see e.g. Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 180 [2011] [listing elements of negligent misrepresentation]). As to plaintiffs' actual fraud claims, defendant's receipt of the policyholder information statement permits the rational inference that its misstatements were knowing and intentional (see IKB Intl. S.A. v Morgan Stanley, 142 AD3d 447, 450 [1st Dept 2016]; ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 131 AD3d 427, 428-429 [1st Dept 2015]).
Defendant contends that plaintiffs fail to plead fraud with particularity, as required by CPLR 3016(b), but plaintiffs' "allegations are sufficiently detailed to fairly apprise [defendant] of the circumstances constituting the wrong" (Merrill Lynch, 19 AD3d at 275).
Plaintiffs allege, in the alternative, mutual mistake as a basis for rescission (see e.g. Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist., 81 NY2d 446, 453 [1993]). Plaintiffs claim, and for this appeal we must accept, that when they executed the consent forms both parties mistakenly believed that defendant was entitled to the demutualization proceeds because it had paid the MLMIC premiums. Mutual mistake "may not be invoked by a party to avoid the consequences of its own negligence" (P.K. Dev. v Elvem Dev. Corp., 226 AD2d 200, 201 [1st Dept 1996]). For the purposes of this motion to dismiss, however, it cannot be said as a matter of law that plaintiffs were negligent (see Ermengildo Zegna Corp. v L&M 825 LLC, 166 AD3d 562 [1st Dept 2018]; Jerome M. Eisenberg, Inc. v Hall, 147 AD3d 602, 605 [1st Dept 2017]).
Defendant contends that the cause of action for breach of fiduciary duty seeking damages, as opposed to a basis for voiding the consent forms, is duplicative of plaintiffs' fraud claims. This claim alleges a duty to disclose potential conflicts of interest, which is not present in any of the fraud claims. Therefore, this claim "[is] based on particular acts different from the alleged fraudulent acts and [is] not duplicative of the fraud claim" (Goldin v TAG Virgin Is., Inc., 149 AD3d 467, 467-468 [1st Dept 2017]).
The voluntary payment doctrine does not bar plaintiffs' claims for conversion, unjust enrichment, and money had and received. This doctrine applies only to payments made without — as alleged here — fraud or mistake (see Dillon v U-A Columbia Cablevision [*4]of Westchester, 100 NY2d 525, 526 [2003]; Matter of Daval-Ogden, LLC v Highbridge House Ogden, LLC, 103 AD3d 422, 423 [1st Dept 2013]; Kirby McInerney & Squire, LLP v Hall Charne Burce & Olson, S.C., 15 AD3d 233 [1st Dept 2005]).
Defendant contends that plaintiffs' conversion claim was properly dismissed because its retention of the demutualization proceeds was authorized. This assumes that the consent forms were valid, which plaintiffs have properly alleged that they were not.
The elements of money had and received are "(1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money" (Lebovits v Bassman, 120 AD3d 1198, 1199 [2d Dept 2014]). If the consent forms are invalid, the demutualization proceeds belong to plaintiffs. Thus, their claim for money had and received should not have been dismissed.
However, plaintiffs' unjust enrichment claim was properly dismissed, because plaintiffs have alleged conventional torts such as breach of fiduciary duty and fraud (see e.g. Corsello v Verizon N.Y., Inc., 18 NY3d 777, 790 [2012]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: September 27, 2022

Footnotes

Footnote 1: Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V. (17 NY3d 269, 278 [2011]) abrogated Blue Chip in part. However, unlike Centro, the instant case does not involve a release. Furthermore, unlike in Centro, the relationship between the parties was not adversarial before plaintiffs signed the documents at issue.