Sharon SHAFFER, Plaintiff–Appellee,

v.

SCHENECTADY CITY SCHOOL DISTRICT, Schenectady City School District Board of Education, Raymond C. Colucciello, Ph.D., individually and as Superintendent of the Schenectady City School District, Warren R. Snyder, individually and as President of the Schenectady City School District Board of Education, Ben Wiles, individually and as a member of the Schenectady City School District Board of Education, Fred Griesbach, individually and as a member of the Schenectady City School District Board of Education, Lawrence M. Murphy, individually and as a member of the Schenectady City School District Board of Education, Steve Russell, individually and as a member of the Schenectady City School District Board of Education, Armando G. Tebano, individually and as a member of the Schenectady City School District Board of Education, and Elizabeth Varno, individually and as a member of the Schenectady City School District Board of Education, Defendants–Appellants.

Docket No. 00–7187.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 2000.

Questions Certified to the New York Court of Appeals April 2, 2001.

---

L. John van Norden, Schenectady, NY, for Appellee.

Robert Herman (Francis J. Earley, of counsel), Plunkett & Jaffe, White Plains, NY, for Appellants.

Before FEINBERG, WINTER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Plaintiff Sharon Shaffer ("Shaffer"), a special education teacher who worked for the Schenectady City School District ("District") from 1994–1998, brought this action pursuant to 42 U.S.C. § 1983 claiming that the District has revoked her tenure in violation of, *inter alia*, the due process, takings, and obligation of contracts clauses of the United States Constitution. Shaffer claimed that she had acquired tenure when the Schenectady City School District Board of Education (the "School Board") voted to grant tenure to a list of public school teachers, which list included her name. The defendants—the District, the School Board, individual members of the School Board, and the District Superintendent, Raymond Colucciello (collectively "Schenectady")—moved to dismiss, contending that the apparent grant of tenure resulted from a clerical error and that in any event the Board had promptly

rescinded it. The United States District Court for the Northern District of New York (Kahn, *J.*) denied the defendants' motion. The court granted the plaintiff's cross motion for partial summary judgment, ordering plaintiff reinstated with back pay. Schenectady appealed.

The dispositive questions in this case are whether Shaffer acquired tenure, and, if so, whether the revocation of that tenure was lawful. Because the case involves important questions governed by New York law, because the relevant "statutory provisions do not resolve the issues on their face, and [because] there is no governing [New York] caselaw on point," *Rangolan v. County of Nassau*, 217 F.3d 77, 80 (2d Cir.2000), we believe that these questions would be best determined by the New York Court of Appeals upon a Certificate from this Court. *See* 2d Cir. R. § 0.27; N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17 (2000); Judith S. Kaye & Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York*, 69 Fordham L.Rev. 373, 419 (2000) ("Certification has had its greatest value where a policy choice among reasonable alternatives—the province of the state high court—is implicated, whether in the reading of a statute or the evolution of a common law principle."). We therefore respectfully request the New York Court of Appeals to accept certification.

## Background

Shaffer began working as a part-time special education teacher for the District in November 1994, and was appointed the following year to a probationary, tenure-track position for the three-year term from September 1, 1995, through September 1, 1998. Sometime in early 1998, Shaffer was recommended for tenure by her principal and immediate faculty supervisor. However, on March 30, 1998, the District

Superintendent, Raymond Colucciello, wrote to Shaffer, advising her that he would be recommending to the School Board that Shaffer's services be discontinued as of June 30, 1998. According to Schenectady, the Superintendent's decision was based on Shaffer's "record of excessive absenteeism." Shaffer's absences did not exceed those permitted in the collective bargaining agreement, and she maintains that she was never warned that such contractually permissible absences could jeopardize her tenure eligibility.

After receiving the Superintendent's letter, Shaffer began a campaign intended to convince the Board and Superintendent to grant her tenure. The teachers' union, various colleagues, Shaffer's supervisor, and a former Board member contacted Schenectady officials on Shaffer's behalf.

On May 29, 1998, the Superintendent submitted to the School Board a document, entitled "Superintendent's Report to the Board of Education," which contained an agenda for the Board's next meeting. The fourth agenda item, labeled "Appointments on Tenure," read: "It is recommended that the Board of Education approve the appointments on tenure listed on the proposed, attached resolution for June 2, 1998." The resolution itself stated: "In accordance with the recommendation of the Superintendent of Schools in his written report to the Board of Education dated May 29, 1998, the person whose name is set forth below is hereby appointed on tenure effective on the date set forth below." Directly beneath this sentence, there was a heading, "Recommendation For Tenure," followed by a list of thirty-three names, along with the addresses, tenure areas, and effective tenure dates of the persons listed. Shaffer's name was on the list, with an effective tenure date of September 1, 1998. Schenectady contends that Shaffer's name was included as the

result of a clerical error in the Superintendent's office.[1]

On June 2, 1998, the School Board passed the resolution, which was then publicly posted and disseminated. Upon learning that her name had been included on the tenure list, Shaffer initially assumed that her lobbying efforts had succeeded. However, after Shaffer's supervisor contacted the Superintendent to confirm the tenure award, the Superintendent communicated to Shaffer that the School Board would rescind the June 2 resolution unless Shaffer agreed to resign. On June 12, 1998, Shaffer's attorney informed the District that Shaffer would not resign. Five days later, on June 17, 1998, the School Board held a special meeting. Shaffer and her attorney were invited to this meeting. Shaffer contends they were prevented from attending by being given incorrect information about the location of the meeting. At the meeting, the Board passed a "resolution rescinding tenure" which stated that, whereas the prior resolution "contained a clerical error," that resolution was "hereby rescinded." The Board then passed a new resolution granting tenure to teachers on a revised list, which did not include Shaffer's name. The action of recission occurred prior to the date on which, according to the resolution granting tenure, Shaffer's tenure became effective.

Shaffer then filed this suit. The district court ordered Shaffer reinstated with back pay, and the defendants appealed. Although the district court ordered the action continued for the purpose of determining damages, we have jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1), to review the district court's grant of injunctive relief.

## Discussion

The disposition of Shaffer's federal claims depends on questions of state law as to whether Shaffer was granted tenure and, if so, whether the Board's subsequent revocation of that tenure was lawful. Under New York law a "tenured teacher has a protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of [the Education Law]." *Gould v. Board of Educ.*, 81 N.Y.2d 446, 451, 599 N.Y.S.2d 787, 616 N.E.2d 142 (1993); *accord Strong v. Board of Educ.*, 902 F.2d 208, 211 (2d Cir.1990) (position as tenured teacher is a property interest protected by Fourteenth Amendment); *see also* N.Y. Educ. Law §§ 2509(2), 3012(2), 3020(1) (McKinney 1995) (tenured employees are not removable except for cause after a hearing). As outlined in N.Y. Educ. Law § 3012, the "causes" for which a tenured teacher may be dismissed do not appear to encompass contractually permissible absences—the reason given in this case.[2] However, the services of a probationary teacher "may be discontinued at any time during [the] probationary period,

1. Although Shaffer, in her brief, specifically declined to acknowledge that the award of tenure was a mistake, at oral argument she conceded, at least for the purposes of this appeal, that her name was placed on the list as the result of a clerical error in the Superintendent's office. Shaffer did not concede there was any error in the Board's vote to confer tenure.

2. Section 3012(2) of the New York Education Law provides that tenured employees shall hold their positions "during good behavior and efficient and competent service, and shall not be removed except for any of the following causes, after a hearing, as provided by section three thousand twenty-a of such law: (a) insubordination, immoral character or conduct unbecoming a teacher; (b) inefficiency, incompetency, physical or mental disability, or neglect of duty; (c) failure to maintain certification...." N.Y. Educ. Law § 3012(2).

on the recommendation of the superintendent of schools, by a majority vote of the board of education." N.Y. Educ. Law § 2509(1)(a). At least one New York court has held that contractually permissible absences may be considered in decisions whether to grant tenure. *See Mugavin v. Nyquist,* 48 A.D.2d 727, 367 N.Y.S.2d 604, 607–08 (3d Dep't 1975). Thus, the grounds for Shaffer's dismissal may well have been an improper basis for the removal of a tenured teacher, but a proper basis for the denial of tenure to a probationary teacher. In addition, tenured teachers, unlike probationary teachers, may be dismissed only pursuant to procedures outlined in the Education Law, which include, *inter alia,* formal filing of charges and a hearing before an impartial labor arbitrator [3]—procedures that were not followed in Shaffer's case.

1.) The first question we confront is whether a teacher who is granted tenure by a Board resolution that states it is to be effective on a future date is nevertheless immediately entitled to the protections accorded under the Education Law to tenured teachers. The Board's grant of tenure to Shaffer by resolution of June 2, 1998, expressly provided that her tenure was to become effective September 1, 1998. The Board rescinded that action on June 17, 1998, months before the effective date. According to the literal terms of the resolution granting tenure, Shaffer would not have become a tenured teacher until September 1. This would suggest that when the resolution was rescinded on June 17, 1998, she was not yet a tenured teacher, but one with merely an expectation of becoming tenured on September 1.

We find that the law with respect to the question is unclear. Section 2509 of New York's Education Law admits of multiple readings:

At the expiration of the probationary term of any persons appointed for such term, or within six months prior thereto, the superintendent of schools shall make a written report to the board of education recommending for appointment on tenure those persons who have been found competent, efficient and satisfactory. By a majority vote the board of education may then appoint on tenure any or all of the persons recommended by the superintendent of schools. Such persons and all others employed in the teaching service of the schools of such school district who have served the full probationary period shall hold their respective positions during good behavior and efficient and competent service, and shall not be removable except for cause after a hearing. . . .

N.Y. Educ. Law § 2509(2). "Such persons" could be read to mean those "appoint[ed] on tenure" who have received the majority vote of the board. If so, a teacher appointed on tenure could not be deprived of such tenure except for cause after a hearing, even if the tenure had not yet become effective. *Cf. Marcus v. Board of Educ.,* 64 A.D.2d 475, 410 N.Y.S.2d 178, 179–80 (3d Dep't 1978) (teacher who received tenure appointment in one school district but resigned before it became effective and who subsequently accepted position in another district was eligible for shortened probationary period under § 2509(1)(a) because he had been "appointed on tenure" in the first district when the board voted to confer tenure). On the other hand, "[s]uch persons" might be read to mean tenured teachers. This latter reading is supported by the provisions of section 3020, which state that "[n]o person *enjoying the benefits of tenure* shall be disciplined or removed during a term of employment except for just cause and in

---

**3.** *See* N.Y. Educ. Law §§ 3020, 3020–a.

accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement." N.Y. Educ. Law § 3020(1) (emphasis added). A person does not enjoy the benefits of tenure until such tenure becomes effective.

New York caselaw also does not provide a clear answer to the question whether a teacher appointed on tenure is entitled to the protections of tenure prior to the effective date of the tenure appointment. In *Weinbrown v. Board of Educ.*, 28 N.Y.2d 474, 322 N.Y.S.2d 714, 271 N.E.2d 549 (1971), the school board appointed a probationary teacher to tenure in April 1968. Several days later the superintendent notified the teacher that the grant of tenure would become effective on July 1. In May, before the effective date specified by the superintendent, the appointment to tenure was revoked by the school board. The New York Court of Appeals found a binding tenure agreement.

■ We do not read *Weinbrown* as resolving our question. *See Mulholland v. Board of Educ.*, 70 Misc.2d 852, 334 N.Y.S.2d 924, 929 (Sup.Ct.1972) ("[A]ll the *Weinbrown* case held was that an offer of an appointment to tenure prior to expiration of the probationary period was permitted under Section 3012 of the Education Law, and that the acceptance of the offer and the salary proposed for the next ensuing school year effected a binding tenure."). The tenure granted by the board in *Weinbrown* did not contain any restriction specifying a future effective date. The Court of Appeals accordingly treated the petitioner as enjoying a right to tenure from the date of that grant. While it is true that the superintendent notified the petitioner that his tenure would become effective on July 1, 1968, under New York law it is the board, not the superintendent,

which has the power to grant tenure. *See* New York Educ. Law §§ 2509(2), 2573(1)(a). Thus, the superintendent did not have the power to postpone the effectiveness of the board's grant of tenure. The issue that concerned the Court of Appeals was whether the board had the *power* to grant tenure prior to expiration of the probationary period. The court found that the statute did not forbid such an offer of tenure, and that tenure became effective once the offer had been accepted. *See Weinbrown*, 28 N.Y.2d at 476, 322 N.Y.S.2d 714, 271 N.E.2d 549; *see also In re Cummings*, 278 A.D. 874, 104 N.Y.S.2d 441, 442 (3d Dep't 1951) (per curiam); *In re Allen (Decision No. 7771)*, 6 Educ. Dep't Rep. 159, 160 (1967). The present case would seem to us to involve a different issue—whether a School Board's grant of teacher tenure that states it will be effective on a future date nevertheless grants immediately effective protection of the tenure statutes. We respectfully request clarification from the Court of Appeals on this question.

2.) If the tenure protections of the Education Law are effective immediately, notwithstanding the specification of a future effective date for tenure itself, the next question we face is the significance of the clerical error in the Superintendent's office. Although there is no New York caselaw directly on point, both parties claim that this Court could resolve the state law questions by inferences drawn from New York precedents. Shaffer argues that in recognizing tenure acquired by estoppel, New York courts have implicitly acknowledged that tenure may be acquired by mistake. *See, e.g., McManus v. Board of Educ.*, 87 N.Y.2d 183, 187, 638 N.Y.S.2d 411, 661 N.E.2d 984 (1995) (where teacher continued to teach beyond probationary period and School Board failed to take actions required by law to grant or deny

tenure, teacher obtained tenure by estoppel); *Gould,* 81 N.Y.2d at 451, 599 N.Y.S.2d 787, 616 N.E.2d 142 (tenure by estoppel existed where both parties erroneously believed teacher was required to serve three-year probationary term, teacher resigned near end of three-year period upon being told she would not receive tenure, and teacher subsequently discovered she was required only to serve two-year probationary term). Shaffer further contends that once the School Board granted her tenure by adopting the initial tenure resolution, it could not rescind that tenure except in accordance with the provisions of the Education Law. *See Allen,* 6 Educ. Dep't Rep. at 160 (once tenure is granted, the Board of Education "is powerless to change its mind without bringing formal charges and according appellant a hearing pursuant to the tenure statute"); *cf. Cummings,* 104 N.Y.S.2d at 442 (even if the tenure appointment is made before the expiration of the probationary period, the Board is "required thenceforth to deal with it as in other cases of tenure"). The defendants argue that this case is unlike *McManus* and *Gould* in that Schenectady advised Shaffer she would be discontinued, took immediate steps to correct the mistaken list, and clarified her position before she had relied in any way on the mistakenly conferred status.

Schenectady argues that, as a matter of New York law, the accidental inclusion of Shaffer's name could not have resulted in a grant of tenure, and that Shaffer was therefore a probationary employee who could be terminated without cause. Schenectady relies on *Rathbone v. Board of Educ.,* 47 A.D.2d 172, 365 N.Y.S.2d 909 (3d Dep't 1975) (per curiam), *aff'd,* 41 N.Y.2d 825, 393 N.Y.S.2d 398, 361 N.E.2d 1046 (1977), for the proposition that New York public school teachers do not acquire vested rights merely because they can point to procedural defects in the appointment pro-

cess. Schenectady also argues on appeal that Shaffer never acquired tenure because she was never affirmatively recommended for tenure by the Superintendent, as required by N.Y. Educ. Law § 2509(2). *See Candor Cent. Sch. Dist. v. Candor Teachers Ass'n.,* 52 A.D.2d 400, 384 N.Y.S.2d 217, 219 (3d Dep't 1976) ("Attempts to grant tenure without the recommendation of the superintendent of schools have been declared unauthorized."), *modified on other grounds,* 42 N.Y.2d 266, 397 N.Y.S.2d 737, 366 N.E.2d 826 (1977); *In re McDaniel (Decision No. 8958),* 12 Educ. Dep't Rep. 182, 183 (1973) ("[A] board of education may not act to confer tenure upon one not recommended therefor by the superintendent."). Shaffer responds that *Rathbone* is not controlling because it involved a probationary teacher, not one who had been granted tenure. With respect to *Candor* and *McDaniel,* she argues that in her case the Superintendent *did* recommend tenure, even if the recommendation resulted from a clerical error.

It is difficult for us to "predict how the . . . state's highest court would decide the issues before us," *McCarthy v. Olin Corp.,* 119 F.3d 148, 154 (2d Cir.1997), not only because there are no clearly applicable precedents, but also because there are significant policy concerns which point in different directions. One cannot ignore that, notwithstanding the accidental cause, the Superintendent recommended that tenure be granted to teachers on a list that included Shaffer, and the School Board voted to grant tenure to those employees. *Cf. Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 539 n. 5, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (Board of Education may not assert that employee has no property right because he obtained his employment by lying since that would allow the Board to "escape its constitutional obligations by rephrasing the basis for termi-

nation as a reason why [the employee] should not have been hired in the first place").

On the other hand, the consequences of the rule advocated by Shaffer—that tenure may be conferred through a clerical error—are potentially dire. If a clerical mistake, or a corrupt act by a clerical employee can create indefeasible rights to tenured teaching positions, even though promptly discovered and corrected before the teacher relies on it, the resulting costs, in incompetent teaching and/or waste of taxpayer funds necessary to buy out such long-term contracts, could be severe. Tenure is not an unlimited resource, either in secondary or higher education. Vacant tenured positions are often scarce. If, due to an error by clerical staff, an unqualified candidate could mistakenly obtain tenured professorial rank, a university might well be prevented for many years in the future from hiring a qualified person. Given that the consequences of granting tenure through a clerical error can be so severe, we wonder whether such mistakes should be uncorrectable.

3.) A further question is whether, if a clerical error can in fact result in a grant of tenure, such tenure might be defeasible. New York law might be understood to provide for some mechanism, such as a judicial or administrative proceeding, for the prompt cancellation of mistakenly conferred tenure. For example, the New York Education Law might be interpreted so that a mistaken grant of tenure constitutes "just cause" for dismissal pursuant to Section 3020, allowing for revocation of such tenure pursuant to the procedures outlined in Section 3020 a. Alternately, New York law might be understood to allow Schenectady to bring an action in state court to terminate its grant of tenure. Whether New York law should be interpreted so as to allow for such a mechanism is not for us to decide.

4.) Finally, Shaffer argues that Schenectady violated the terms of the collective bargaining agreement by denying her tenure based on contractually permissible absenteeism. The collective bargaining agreement provides that "[t]enure shall be granted to full time probationary employees following three (3) years of satisfactory service." [JA 121.] This language appears to be more protective of probationary teachers than the Education Law itself. *See Harrison v. Goldstein,* 204 A.D.2d 451, 611 N.Y.S.2d 623, 624 (2d Dep't 1994) (under Education Law, tenure can be denied despite satisfactory ratings in probationary period). However, we are unsure whether the collective bargaining agreement is enforceable. The Court of Appeals held in *Cohoes City Sch. Dist. v. Cohoes Teachers Ass'n,* 40 N.Y.2d 774, 777, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976), that a collective bargaining agreement which "purport[s] to prohibit termination without just cause at the end of the probationary period ... is unenforceable." *But see Ricca v. Board of Educ.,* 47 N.Y.2d 385, 392, 418 N.Y.S.2d 345, 391 N.E.2d 1322 (1979) (school districts "may, of course, provide teachers with greater security [in tenure] than that mandated by statute, at least in the absence of any violation of public policy").

.    .    .    .    .

██ Where "unsettled and significant question[s] of state law ... will control the outcome of [the] case," 2d Cir. R. § 0.27, we may certify those questions to the New York Court of Appeals. *See also* N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17 (2000) (certification is proper when "determinative questions of New York law are involved ... for which there is no controlling precedent of the Court of Appeals"); *Riordan v. Nationwide Mut. Fire Ins. Co.,*

977 F.2d 47, 51 (2d Cir.1992) (certifying questions is proper "where [a] statute's plain language does not indicate the answer, or when [we are] presented with a complex question of New York common law for which no New York authority can be found"); Kaye & Weissman, *supra*, at 419. Moreover, at oral argument both parties consented to certification. *Cf. Goodlett v. Kalishek*, 223 F.3d 32, 38 n. 4 (2d Cir.2000) (fact that both parties opposed certification was a factor that should be given substantial but not dispositive weight).

■ In view of the facts discussed above, including in particular the following:

1. a district Superintendent submitted to the School Board a resolution recommending grant of tenure to a list of public school teachers, which list (as the result of clerical error in the Superintendent's office) included the name of Plaintiff, a teacher completing her probationary term whom the Superintendent did not intend to recommend and had advised she would be discontinued;

2. the School Board, intending to grant tenure to those recommended by the Superintendent, voted on June 2, 1998, to grant tenure to all the persons on the Superintendent's list;

3. the School Board's grant of tenure specified in Plaintiff's case an "effective date" of September 1, 1998; and

4. the School Board, on discovering the Superintendent's error, voted on June 17, 1998, to rescind the grant of tenure of June 2, 1998;

we hereby respectfully certify the following questions to the New York Court of Appeals:

a. Did the Board's action of June 2, 1998, give Plaintiff entitlement to the protections accorded tenured teachers under the Education Law?

b. If so, did the Board's action of June 17, 1998, constitute a lawful revocation of Plaintiff's tenure?

The certified question may be deemed expanded to cover any further pertinent question of New York law involved in this appeal that the Court of Appeals chooses to answer.[4] This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance, or declined certification.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendices, and record filed in this Court by the parties.

### Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.

---

**4.** If the answers given by the Court of Appeals are in favor of the defendants, the Court of Appeals may wish to further advise us whether a collective bargaining agreement can, under New York law, create rights to receive tenure that are broader than those provided by New York statutes, and whether Shaffer was contractually entitled to receive tenure based on the provisions of the Schenectady collective bargaining agreement.