■ BROADWAY—111TH STREET ASSOCIATES et al., Respondents, v SELINA S. MORRIS et al., Appellants.—Order and judgment (one paper), Supreme Court, New York County (Beatrice Shainswit, J.), entered September 25, 1989, which, *inter alia,* denied the defendants' motion to dismiss and granted the plaintiffs' cross motion for summary judgment, is unanimously modified, on the law and on the facts, to the extent of denying plaintiffs' cross motion for summary judgment vacating the judgment and reinstating the complaint, and, except as so modified, otherwise affirmed, without costs.

Broadway—111th Street Associates (sponsor) is the sponsor of a condominium-cooperative conversion of a residential apartment building (premises) located at 600 West 111th Street, Manhattan. Subsequently, the sponsor sold the residential cooperative portion of the premises to Broadway 111 Owners Corp. (Cooperative Corporation). When the cooperative conversion plan closed on April 5, 1988, Ms. Selina Schreiber Morris was the rent-stabilized tenant of apartment 14A (apartment), which contains 6½ rooms.

Almost a year before the conversion plan closed, on or about March 31, 1987, copies of the original cooperative offering plan (Blackbook) were distributed to all tenants in occupancy, such as Ms. Morris. Pursuant to the provisions contained in the Blackbook, the number of shares allocated to Ms. Morris' apartment was 354, and at a price of $914 per share, if Ms. Morris had desired to purchase the apartment at that time, she would have had to pay $323,556 (354 times $914 per share).

During the more than nine-month period which elapsed between the distribution of the Blackbook and January 6, 1988, the tenants received six amendments to same. Those amendments, while not changing the number of shares allocated to the apartment, did reduce the price per share from $914 to $685.80 and, as a result, the insider price to purchase Ms. Morris' apartment had been reduced more than $80,000 to $242,773 (354 shares times $685.80 per share).

The seventh and eighth amendments to the Blackbook were circulated to the tenants in June and August 1988, respectively, and those two documents indicated the number of shares allocated to Ms. Morris' apartment was now 254, and the price per share had been further reduced from $685.80 to $450. Further, Ms. Morris received a written communication, dated July 25, 1988, from a sales agent of the sponsor, which solicited her to purchase the apartment for $114,300 (254 shares times $450 per share).

Thereafter, on August 31, 1988, Ms. Morris and Ms. Lenore Schreiber, who is her sister (purchasers), entered into a contract with the sponsor to purchase the apartment for $114,300, and this contract, which was drafted by the sponsor, indicated that 254 shares had been allocated to the subject apartment.

Subsequently, on November 10, 1988, in the sponsor's counsel's office, the closing of this apartment purchase transaction took place. Present were the purchasers and their counsel, as well as the sponsor's counsel.

During the closing, the sponsor assigned the proprietary lease and transferred stock certificate number 178 to the purchasers, and both of those documents indicated that 254 shares had been allocated to the apartment.

A week after the closing, on November 17, 1988, the sponsor's counsel notified the purchaser's counsel that a typographical error had been made in the seventh and eighth amendments to the Blackbook, the contract of sale, the propri-

etary lease, and stock certificate number 178, since those documents incorrectly reflected that 254 shares had been allocated to the apartment. Further, sponsor's counsel contended that the correct number of shares allocated to the apartment was 354, since that was the number of shares reflected in the Blackbook. According to the sponsor's counsel the purchase price of $114,300 was also incorrect, since that price had been calculated upon the mistaken assumption that 254 shares had been allocated to the apartment (254 shares times $450 per share). Based upon those errors, the sponsor's counsel told the purchaser's counsel that the correct purchase price for the apartment was $159,300 (354 shares times $450 per share) and, therefore, the purchasers owed the sponsor $45,000, since they had paid the incorrect sum of $114,300.

In order to remedy the situation, which was caused by the sponsor's mistakes as to the number of shares and the purchase price, the sponsor offered to either reform or rescind the contract of sale. Specifically, the sponsor expressed its willingness to issue a new stock certificate for 354 shares, upon receipt of an additional $45,000 from the purchasers, or, in the alternative, refund the $114,300 to the purchasers, with interest and expenses, and restore Ms. Morris to her former status as the rent-stabilized tenant of the apartment. In response, the purchasers rejected both of the sponsor's proposals.

Shortly thereafter, in December 1988, the sponsor and the Cooperative Corporation (plaintiffs) commenced an action against the purchasers (defendants) for reformation or rescission of the contract of sale in the Supreme Court, New York County.

Prior to the joinder of issue, the defendants moved to dismiss the complaint and the plaintiffs cross-moved, pursuant to CPLR 3211 (c), for summary judgment. The IAS court denied the defendants' motion and granted the plaintiffs' cross motion. Defendants appeal.

This case involves an alleged unilateral mistake by plaintiffs, since they prepared all of the documents, and their counsel, in an affidavit, admits the mistake as to the number of shares occurred as a result of "an inadvertent [plaintiffs'] typist's error".

Equity will grant rescission of a contract, upon the basis of a party's unilateral mistake, when there is no prejudice to the other party and "the parties can be put back in *statu [sic] quo*" (*Abner M. Harper, Inc. v City of Newburgh,* 159 App Div

695, 697 [1913]; *Matter of T.P.K. Constr. Corp. v O'Shea,* 69 AD2d 316, 317 [1979]).

We have held "[t]he function of summary judgment is issue finding, not issue determination" *(Pantote Big Alpha Foods v Schefman,* 121 AD2d 295, 296 [1st Dept 1986]; *Double A Limousine Serv. v New York, N. Y. Limousine Serv.,* 130 AD2d 403, 404 [1st Dept 1987]). Further, we stated in *Gibson v American Export Isbrandtsen Lines* (125 AD2d 65, 74 [1st Dept 1987]), "[a]s repeatedly held, the remedy of summary judgment is a drastic one, which should not be granted where there is any doubt as to the existence of a triable issue *(Moskowitz v Garlock,* 23 AD2d 943, 944) or where the issue is even arguable *(Barrett v Jacobs,* 255 NY 520, 522), since it serves to deprive a party of his [or her] day in court. Relief should be granted only where no genuine, triable issue of fact exists *(see, Werfel v Zivnostenska Banka,* 287 NY 91)".

Applying the legal authority, *supra,* to the record before us, we find that there are triable issues of fact in this case, which include: (1) can these parties be restored to the position they were in before the closing, without prejudice to the defendants? The defendants, in their papers submitted in opposition to the plaintiffs' cross motion for summary judgment, contend that they will be severely prejudiced by reformation or rescission of the contract of sale. Defendant, Ms. Morris, in an affidavit, states that, *inter alia,* she cannot afford to pay $159,300 to purchase the apartment, and her elder sister and herself "made fundamental life choices and irreversible monetary decisions * * * on the basis of my apartment purchase". For example, in that affidavit, Ms. Morris indicates she reduced her retirement payments, as a junior high school teacher, in order to have sufficient funds to pay for the apartment, and her daughter, who is graduating from college, has decided to remain in New York City in reliance "on the fact that my family would always have a place to live in New York in view of my purchase" and,

(2) was the plaintiffs' mistake, if any, due to mere negligence, recklessness, or gross negligence?

Based upon our analysis, *supra,* we find that the IAS court erred insofar as it granted plaintiffs' cross motion for summary judgment.

Accordingly, we modify the order and judgment to the extent of denying plaintiffs' cross motion. Concur—Kupferman, J. P., Ross, Smith and Rubin, JJ.