[660 NYS2d 115]

Edward Weissman, Appellant, v Bondy & Schloss et al., Respondents.

First Department, June 24, 1997

## APPEARANCES OF COUNSEL

*Michele Kahn* of counsel *(Joel S. Sankel* on the brief; *Sankel, Skurman & McCartin, L. L. P.,* attorneys), for appellant.

*Jamie M. Brickell* of counsel *(James S. O'Brien, Jr.,* on the brief; *Pryor, Cashman, Sherman & Flynn,* attorneys), for respondents.

## OPINION OF THE COURT

NARDELLI, J.

Plaintiff is the son of decedent Jacob Weissman and defendants Josephine Hall and Sonia Weissman are, respectively, his sister and mother. These family members are the sole officers, directors and shareholders of the three defendant corporations, real estate holding companies formerly owned by the decedent. In addition, plaintiff, defendant Hall and their mother are the sole executors and beneficiaries of the estate of Jacob Weissman, which owns 60% of the shares of the corporations and a substantial amount of improved and unimproved land in Woodstock, New York. The parties had disputes over the disbursement of funds from the estate and the corporations and the plaintiff in a petition seeking dissolution of the three corporations alleged conversion and waste of assets by the other family members. After a fact-finding hearing before a Referee, the parties resolved the disputes in a stipulation that settled all of the parties' claims and counterclaims. This stipulation was "so ordered" by the court on June 29, 1995. Plaintiff resigned as officer and director of the three corporations and assigned all his shares to the individual defendants. He also resigned as trustee and assigned his beneficial interest in any trusts created pursuant to the will of his father Jacob Weissman. Plaintiff waived his rights as a beneficiary of the estate except as provided in the stipulation, and withdrew his objections to the accountings of the individual defendants in Surrogate's Court. In return, defendants Hall and Weissman agreed to pay plaintiff $50,000 and convey some improved property and unimproved property in Woodstock to plaintiff as the balance of his share of the estate. The improved property,

valued for estate tax purposes at $200,000, was conveyed to the plaintiff directly by the estate, which was its owner. The unimproved property, whose stated value for estate tax purposes was $240,000, was owned by Vane Realty Corp. It was to be conveyed by means of a transaction in which plaintiff would receive shares in Vane Realty believed to be equal in value to the unimproved property. Plaintiff would then transfer and assign these shares to Vane in return for a conveyance of the property to him. The defendants would retain control of the various corporations and remaining parcels of realty owned by the estate. The estate tax liability was split between the parties with defendants liable for 90% and plaintiff for 10% thereof. To ensure payment of the taxes as agreed, defendants were required to execute a confession of judgment in the amount of $2,250,000 in favor of plaintiff and plaintiff was required to place in escrow up to 50% of the net proceeds realized upon his resale of the Woodstock property.

Thereafter, there were disputes with regard to implementation of the stipulation, and plaintiff sought to compel his mother and sister to comply with the cash payment and the transfer of the Woodstock property. In opposition, defendant Hall stated that she had been advised that the capital gains tax on the Woodstock property would become due and owing upon the transfer of the property to the plaintiff by Vane Realty Corp., prior to any sale by the plaintiff, and that this was not the intent of the agreement when it was executed. Defendants, therefore, sought reformation of the agreement. The court, as noted, vacated the stipulation, finding that a material aspect of the agreement was not understood and considered by the parties.

Initially, defendants-respondents, contrary to the finding by the IAS Court, ratified the agreement by taking certain actions only allowed if the agreement were in full force. Thus, defendants sold a parcel of property in Manorville, New York, negotiated tax liens with the Internal Revenue Service and paid counsel fees of $225,000 to defendant Bondy & Schloss, after entering the agreement.

In any event, the agreement was improperly vacated by the IAS Court. "Stipulations of settlement are favored by the courts and not lightly cast aside (see *Matter of Galasso*, 35 NY2d 319, 321). This is all the more so in the case of 'open court' stipulations (*Matter of Dolgin Eldert Corp.*, 31 NY2d 1, 10) within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is es-

sential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (*Matter of Frutiger*, 29 NY2d 143,149-150)." (*Hallock v State of New York*, 64 NY2d 224, 230.)

Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission (*Matter of Gould v Board of Educ.*, 81 NY2d 446, 453). The mutual mistake must exist at the time the contract is entered into and must be substantial. "The idea is that the agreement as expressed, in some material respect, does not represent the 'meeting of the minds' of the parties" (*supra,* at 453). However, in this case, defendants seek rescission of the stipulation based upon a unilateral mistake as to the applicable tax law. Thus, they unilaterally misunderstood or failed to consider the tax implications of the mechanism agreed upon for the transfer of the Woodstock property from the Vane corporation to plaintiff. As noted by the IAS Court, there were "intense negotiations between the parties," who were represented by counsel at all times, with respect to the terms of the stipulation. The agreement itself, as noted above, contains various provisions specifically detailing the apportionment of estate tax liability and specifically requiring that "50% of the net proceeds (up to 10% of the outstanding estate tax liability, but not to exceed a total amount of $250,000) from any Edward [plaintiff] re-sale [of the Woodstock property] shall be deposited in an interest bearing account with his attorneys * * * in escrow to ensure payment of his share of estate taxes". The term "net proceeds" refers to the proceeds realized by plaintiff on his *re-sale* of the property and is defined in paragraph 24 as the gross sales price less, *inter alia*, broker's commissions, transfer taxes and *capital gains taxes*. Given the context, the capital gains taxes referred to could only be the taxes on the capital gains realized *by plaintiff* upon his resale of the property. Since both parties consulted with counsel and tax experts when negotiating the stipulation, the silence of the agreement with respect to the payment of capital gains taxes concededly due upon the transfer of the property from Vane Realty to plaintiff does not support the IAS Court's conclusion that neither party considered the matter, upon which the court based its finding of mutual mistake. The rule that a corporation must recognize taxable gain when it distributes appreciated property to a

shareholder in exchange for its own stock is set forth in Internal Revenue Code (26 USC) § 311 (b) (1), and since this was the exact manner in which the Woodstock property was to be transferred to the plaintiff pursuant to the stipulation, it could have been discovered upon diligent research by the defendants. "Here, the parties' mistake amounts to nothing more than a misunderstanding as to the applicable law, and CPLR 3005 does not direct undoing of the transaction (*cf.*, *Gimbel Bros. v Brook Shopping Ctrs.*, 118 AD2d 532 [lack of diligence in determining legal obligations under contract did not entitle party to restitution on the ground that it acted under a mistake of law])." (*Symphony Space v Pergola Props.*, 88 NY2d 466, 485).

Therefore, the "mistake" as to the applicable law cannot be described as mutual. Moreover, plaintiff maintained throughout that he was not responsible for the capital gains tax upon the transfer of the property to him.

Even where a mistake is unilateral, as herein, not mutual, a court acting in equity may rescind the contract if failing to do so would result in unjust enrichment of the plaintiff (*Matter of Gould v Board of Educ.*, *supra*, at 453). Plaintiff would not, however, be unjustly enriched by enforcement of the stipulation as executed after arm's length negotiation. "A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust (Restatement, Restitution, § 1, Comment *a*). A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity." (*Sharp v Kosmalski*, 40 NY2d 119, 123.)

Applying equitable principles herein, it can readily be seen that the parties were acting in an adversarial relationship when the stipulation was entered, settling a legal dispute where both sides were represented by counsel and both were aware that there were tax consequences in their actions. Plaintiff gave up his entire beneficial interest in an estate with a gross value of $3,378,250 (as reported in the estate tax return), and remained liable for 10% of the estate tax. In return, plaintiff received property worth approximately $446,000 or 13% of the value of all the property owned by the estate. Under these circumstances, there was no unjust enrichment of the plaintiff at the expense of the defendants-respondents that should be remedied by equity.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered April 8, 1996, which, *inter alia*, denied plaintiff-appellant's motion for an order compelling defendants-respondents to perform obligations required by a stipulation of settlement between the parties, so ordered on June 29, 1995 (same court and Justice), and granted defendants-respondents' cross motion for, *inter alia*, an order amending and reforming the stipulation, by rescinding and setting aside the agreement and directing that a hearing be held, should be reversed, on the law and facts, with costs and disbursements payable to plaintiff-appellant, and defendants-respondents' cross motion to reform or amend the agreement denied and plaintiff-appellant's motion for an order compelling defendants-respondents to perform pursuant to the stipulation granted.

MILONAS, J. P., ELLERIN and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered April 8, 1996, reversed, on the law and facts, with costs and disbursements payable to plaintiff-appellant, motion by plaintiff-appellant for an order compelling defendants-respondents to perform pursuant to the stipulation of settlement granted and cross motion by defendants-respondents to reform or amend said stipulation denied.