■ RODNEY T. COX, Appellant, v LEHMAN BROTHERS, INC., Respondent. [790 NYS2d 16]—

Order, Supreme Court, New York County (Marilyn Shafer, J.), entered June 17, 2003, which, after a nonjury trial in an action to enforce a stipulation of settlement in an arbitration proceeding, directed judgment in favor of defendant on its counterclaim to rescind the stipulation, unanimously affirmed, without costs.

Plaintiff maintained a margin account with defendant, secured by shares of stock in a publicly traded corporation (Borealis) of which plaintiff was an officer and director. After defendant commenced an arbitration before the American Stock Exchange to collect a margin debt of $65,791.96, consisting of principal of $28,406.29 and disputed interest of $37,385.67, the parties stipulated that upon payment of $60,000, defendant would "remit" to plaintiff 112,400 shares of Borealis. While the stipulation did not qualify the 112,400 figure in any manner or link it to plaintiff's account, it was the number of shares that defendant's arbitration claim alleged were in the account. However, after plaintiff paid the $60,000 settlement, defendant discovered that it had made a mistake and that there were only 81,700 shares in the account. While plaintiff asserts that he did not know how many shares were in the account, he acknowledged receiving statements showing the 81,700 figure, which he never challenged.

A unilateral mistake can be the basis for rescission if failing to rescind would result in unjust enrichment of one party at the expense of the other (*see Weissman v Bondy & Schloss*, 230 AD2d 465, 469 [1997]), and the parties can be returned to the status quo ante without prejudice (*see Broadway-111th St. Assoc. v Morris*, 160 AD2d 182, 184-185 [1990]). Here, plaintiff owed defendant a margin debt secured by shares of Borealis, but did not want defendant to liquidate the stock, as defendant had the right to do, and over a period of time made various proposals designed to satisfy the debt in return for the stock's

release. However, there is no indication that plaintiff ever asked for more shares than were in the account. Just prior to the arbitration, plaintiff offered to pay the principal balance of $28,406.29 in return for defendant's "release [of] any holds, or constraints on [plaintiff's] account," but defendant rejected the offer, demanding that plaintiff also pay $37,385.67 in accrued interest, which became the bone of contention.

Defendant had a viable claim for the margin account interest and there is no claim that it wrongfully liquidated the Borealis shares or did not apply the proceeds thereof to reduce the margin debt to the amount it sought in the arbitration. Given these circumstances, the end result of forcing defendant to enter the market and purchase the additional shares required to cover the shortfall would be the elimination of plaintiff's debt to defendant by way of a payment from defendant to plaintiff. Such a windfall should be avoided given no indications that defendant lacked good faith or intentionally avoided making an inquiry it had reason to know would disclose the true facts (see *Balaban-Gordon Co. v Brighton Sewer Dist. No. 2*, 41 AD2d 246, 249, 251 [1973]). It simply appears that its paralegal, assigned to review the stipulation for factual error, relied on the wrong account statement in coming up with the number of shares. Remanding the controversy to arbitration, where plaintiff can pursue his claim that defendant is not entitled to the interest it seeks, effectively restores plaintiff to the status quo ante. While plaintiff complains of the additional cost incurred as a result of the litigation, it was his choice to reject defendant's offer to return either the $60,000 settlement payment or the 81,700 shares. Concur—Mazzarelli, J.P., Saxe, Marlow, Ellerin and Nardelli, JJ.