*700 OPINION OF THE COURT
Shlomo S. Hagler, J.
Issue
The novel issue to be determined herein is whether secondhand smoke emanating from a neighbor gives rise to a breach of the implied warranty of habitability and a constructive eviction under the realities of modern urban dwelling. Most urban dwelling in New York City comprises “vertical living” in high-rise apartment buildings with possibly multiple neighbors in all directions. With multiple neighbors living beside each other comes basic duties and responsibilities. There is a duty to protect each other’s right to privacy and a responsibility not to invade a neighbor’s privacy. The unwanted invasion of privacy comes in many guises such as noise, smells, odors, fumes, dust, water and even secondhand smoke.
The key to avoiding such unneighborly behavior is for the neighbor to follow the often forgotten “Golden Rule” — You shall love your fellow or neighbor as yourself. The Golden Rule is a general principle of ethics which essentially admonishes neighbors as follows: What is hateful to you, do not do to your neighbor. The landlord also has an obligation to ensure that the conditions do not render the apartment “unsafe and uninhabitable” or prevents the premises from serving their intended function of residential occupation. When neighbors fail to respect each other and the landlord does not act, the law imposes its will on landlords and tenants through the statutorily enacted implied warranty of habitability pursuant to Real Property Law § 235-b.
Implied Warranty of Habitability
In the landmark case of Park W. Mgt. Corp. v Mitchell (47 NY2d 316 [1979]), the Court of Appeals defined the history and parameters of Real Property Law § 235-b or the implied warranty of habitability. Real Property Law § 235-b was enacted in August 1975, to provide modern urban dwellers with much needed protections and rights to compel landlords to make necessary repairs and provide essential services. (L 1975, ch 597.) In other words, Real Property Law § 235-b placed “the tenant in parity legally with the landlord.” (1975 Sen J 7766-7776 [Remarks of Senator Barclay].) For more than 30 years, this powerful law continues to impose a warranty of habitability in every landlord-tenant relationship where the landlord impliedly *701 warrants as follows: “[F]irst, that the premises are fit for human habitation; second, that the condition of the premises is in accord with the uses reasonably intended by the parties; and, third, that the tenants are not subjected to any conditions endangering or detrimental to their life, health or safety.” (Park W. Mgt. Corp., 47 NY2d at 325.)
The scope and breadth of Real Property Law § 235-b is far-reaching. Landlords must warrant against “latent” and “patent” conditions throughout the entire tenancy “occasioned by ordinary deterioration, work stoppage by employees, acts of third parties or natural disaster” (47 NY2d at 327 [emphasis added]). The standard for a breach of the implied warranty of habitability is measured “in the eyes of a reasonable person” not in a vacuum which ignores the “essence of the modern dwelling unit.” (Id. at 328.) Real Property Law § 235-b was intended to provide an objective standard for “those essential functions which a residence is expected to provide.” (Solow v Wellner, 86 NY2d 582, 589 [1995].)
Secondhand Smoke
While there appear to be no reported cases dealing with secondhand smoke in the context of implied warranty of habitability,[1] secondhand smoke is just as insidious and invasive as the more common conditions such as noxious odors,[2] smoke odors,[3] chemical fumes,[4] excessive noise,[5] and water leaks and extreme dust penetration.[6] Indeed, the United States Surgeon General, the New York State Legislature and the City of New York City Council declared that there is a substantial body of scientific research that breathing secondhand smoke poses a significant health hazard. (U.S. Surgeon General’s Report on *702 The Health Consequences of Involuntary Smoking [Dec. 1986]; Public Health Law § 1399-n [1]; Administrative Code of City of NY § 17-501.) Therefore, this court holds as a matter of law that secondhand smoke qualifies as a condition that invokes the protections of Real Property Law § 235-b under the proper circumstances. As such, it is axiomatic that secondhand smoke can be grounds for a constructive eviction. (See, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77 [1970]; cf., East End Temple v Silverman, 199 AD2d 94 [1st Dept 1993] [holding that a single occurrence of smoke did not amount to a substantial deprivation of use and enjoyment of the residential premises].)
Of course, the court must look to the operative facts to determine whether or not the secondhand smoke was so pervasive as to actually breach the implied warranty of habitability and/or cause a constructive eviction. This court will now turn to the facts of this case to make such a determination.
Procedural History
Plaintiff Peter Poyck (plaintiff, landlord, or Poyck) commenced this plenary action to collect rent and late charges for the months of August 2001 through December 2001, at $2,597 per month. (See exhibit E to the motion.) Defendants Stan Bryant and Michelle Bryant (defendants, tenants, or the Bryants) interposed a written answer, inter alia, denying the allegations of the complaint and asserting their third and fourth affirmative defenses and first and second counterclaims for breach of warranty of habitability and constructive eviction due to secondhand smoke. (See exhibit F to the motion.)
In or about June 2005, plaintiff moved for an order pursuant to CPLR 3212 granting him summary judgment striking and/or dismissing the defendants’ third and fourth affirmative defenses and first and second counterclaims. The motion was adjourned to October 14, 2005. On the return date, this court denied the motion without prejudice on procedural grounds.[7]
In or about March 2006, plaintiff moved for an order pursuant to CPLR 2221 (e) and 3212 renewing his prior motion for *703 summary judgment striking and/or dismissing defendants’ third and fourth affirmative defenses and first and second counterclaims. The motion was adjourned to August 1, 2006. Defendants opposed the motion.
Background
Parties
At all times relevant hereto, plaintiff was the owner and lessor of condominium unit No. 5-D located at 22 West 15th Street, New York, New York. By virtue of a residential lease dated November 11, 2000, defendants were the tenants or lessees of the subject premises for a two-year term from January 1, 2001 through December 31, 2002, at $2,597 per month. (See exhibit A to the motion.) Defendants allegedly moved into the subject premises in 1998 and vacated at the end of August 2001.
Uncontroverted Facts
After living in the subject premises for approximately three years, in or about March 2001, new neighbors moved next door to defendants. The new neighbors constantly smoked in the common fifth-floor hallway and in apartment 5-C. The tobacco smoke or secondhand smoke penetrated into the subject premises. At that time, defendants complained to the subject building’s superintendent, Frank Baldanza, about the hazardous secondhand smoke condition. The super allegedly spoke to the defendants’ next-door neighbors to no avail. The incessant smoke continued unabated.
When the super’s efforts failed, defendant Stanley Bryant wrote a letter dated June 29, 2001 to the super and to plaintiff Peter Poyck as well as to Poyck’s attorney-in-fact, Charles Corso, seeking a solution to the hazardous smoking problem and informing them that they may consider a “healthier living situation” as follows:
“To date, their [next-door neighbors in apartment 5-C] tobacco smoke continues to permeate this end of the fifth floor hallway and my home. This is not simply a matter of unpleasant odors; it represents an ongoing health hazard for my wife who is recovering from her second cancer surgery and who is extremely allergic to tobacco smoke. Prior to the current tenant moving into 5-C, this problem did not exist on the fifth floor.
*704 “To try to remedy the situation, I have sealed my apartment entry door with weather stripping and a draft barrier. I operate two hepa air filters round the clock, incurring additional electric charges. Despite these efforts, we can still smell the smoke from 5-C in our apartment.
“If you can help in any way to remedy this problem, we would be extremely appreciative. Failing that, we must consider finding a healthier living situation.” (See exhibit B to the motion.)
Notwithstanding the above, the landlord took no action to curtail their neighbors’ smoking that was invading the Bryants’ home. About 30 days later, defendants decided to vacate the subject premises due to the incessant secondhand smoke and wrote a letter to their landlord dated August 1, 2001, notifying him of their decision as follows:
“Due to my wife’s continuing health concerns and our most recent and apparently ongoing ‘smoking’ issue with our next door neighbor (please refer to our letter to Frank Baldanza dated June 29th) we have found it necessary to look elsewhere for more appropriate living quarters. Please note that we will be vacating this apartment by the end of August, 2001.” (See exhibit C to the motion.)
Summary Judgment
The movant has the initial burden of proving entitlement to summary judgment. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].)
“[T]he remedy of summary judgment is a drastic one, which should not be granted where there is any doubt as to the existence of a triable issue (Moskowitz v Garlock, 23 AD2d 943, 944) or where the issue is even arguable (Barrett v Jacobs, 255 NY 520, 522), since it serves to deprive a party of his day in court. Relief should be granted only where no genuine, triable issue of fact exists” (Broadway— 111th St. Assoc. v Morris, 160 AD2d 182, 185 [1st Dept 1990]).
Real Property Law § 235-b Inapplicable to Condominium Board of Managers
In this case, neither party asserted claims against the condominium’s board of managers because the implied warranty of habitability pursuant to Real Property Law § 235-b *705 does not apply to the relationship between the board of managers of a condominium and an individual unit owner. (Frisch v Bellmarc Mgt., 190 AD2d 383 [1st Dept 1993].) However, the defendants as tenants of unit 5-D may rely on Real Property Law § 235-b against the plaintiff, the only landlord in this action. (190 AD2d at 390.)
Landlord’s Lack of Control of Third Parties
The gravamen of plaintiffs motion is that he cannot be held liable for the actions of third parties beyond his control such as the neighbors in unit 5-C. This argument is misplaced as the Court of Appeals, since 1979, has clearly stated that the acts of third parties are within the scope of a landlord’s responsibility pursuant to Real Property Law § 235-b. (Park W. Mgt. Corp., 47 NY2d at 326.) The courts have continuously held that the implied warranty of habitability can apply to conditions beyond a landlord’s control. (Elkman v Southgate Owners Corp., 233 AD2d 104 [1st Dept 1996] [an alleged noxious odor emanating from a retail fish store in an adjacent building neither owned nor controlled by the landlord cooperative corporation may be a breach of the implied warranty of habitability]; Sargent Realty Corp. v Vizzini, 101 Misc 2d 763 [Civ Ct, NY County 1979] [floods caused by upstairs tenant on four occasions which landlord allowed to persist resulted in substantial abatement]; Quasha v Third Colony Corp., NYLJ, Oct. 10, 1990, at 22, col 2 [Sup Ct, NY County] [noise emanating from neighbor stated a claim for breach of implied warranty of habitability]; Solomon v Brandy, NYLJ, Sept. 7, 1994, at 22, col 6 [Civ Ct, Bronx County] [evicted neighboring tenant who caused nuisance resulting in lack of water supply to tenant did not constitute a good faith defense to the implied warranty of habitability].)
While the landlord contends that he had no control over the neighbors in apartment 5-C, he failed to offer any evidence that he took any action to eliminate or alleviate the hazardous condition. The landlord could have asked the board of managers of the condominium to stop the neighbors from smoking in the hallway and elevator as well as to take preventive care to properly ventilate unit 5-C so that the secondhand smoke did not seep into the Bryants’ apartment. Specifically, Real Property Law § 339-v (1) (i) mandates that condominium bylaws restrict the use and maintenance of both the units and common elements such as the hallways and elevators so as to “prevent unreasonable interference with the use of respective units and of the common elements by the several unit owners.” The board *706 of managers and even the landlord could have commenced an action for damages or injunctive relief for noncompliance with the bylaws and decisions of the board of managers pursuant to the Condominium Act. (See, e.g., Board of Mgrs. of Vil. House v Frazier, 81 AD2d 760 [1st Dept 1981], affd 55 NY2d 991 [1982].) Moreover, in the case of “flagrant or repeated violation” by a unit owner, the Condominium Act also authorizes the board of managers to impose sufficient surety to ensure future compliance with their bylaws and decisions. (Real Property Law § 339-j.)
Conclusion
Inasmuch as there are triable issues of fact as to whether the secondhand smoke breached the implied warranty of habitability and caused a constructive eviction, plaintiffs motion to strike and/or dismiss the defendants’ third and fourth affirmative defenses and first and second counterclaims must be denied.

. However, this court’s independent research found the case of Bender v Niebel (11 Misc 3d 136[A], 2006 NY Slip Op 50502[U] [App Term, 2d & 11th Jud Dists 2006]) wherein the Appellate Term listed the landlords’ cigarette smoke as part of a litany of severe conditions that survived a dismissal motion. While Bender has some precedential value, it did not directly deal with the single issue of secondhand smoke emanating from neighbors as opposed to the landlords themselves.

. See Elkman v Southgate Owners Corp., 233 AD2d 104 (1st Dept 1996).

. See Chetworth Constr. Corp. v Casati, NYLJ, May 1, 1985, at 12, col 5 (App Term, 2d & 11th Jud Dists).

. See Goldman v Sears-Robbins/Robbins, NYLJ, June 15, 1998, at 30, col 3 (Civ Ct, NY County, Strauss, J.).

. See Matter of Nostrand Gardens Co-Op v Howard, 221 AD2d 637 (2d Dept 1995).

. See Minjak Co. v Randolph, 140 AD2d 245 (1st Dept 1988).

. Plaintiff failed to allege and/or attach the following six items of information: (1) whether plaintiff is the owner of apartment 5-D located at 22 West 15th Street, New York, New York; (2) whether plaintiff is the owner and/or tenant of the neighboring apartment 5-C of the subject building; (3) who is the owner and/or tenant of apartment 5-C; (4) who is responsible for overseeing the common areas such as the hallways and/or elevators in the subject building; (5) whether there is a “house rule” or other document such as the “by-laws” which prohibits and/or restricts smoking in the subject building; *703 and (6) whether plaintiff is the sponsor and/or owner of the subject building. (See exhibit G to the motion.)