■ LEHMAN BROTHERS, INC., Respondent, v RODNEY T. COX, Appellant. [841 NYS2d 265]—

Order and judgment (one paper), Supreme Court, New York County (Marilyn Shafer, J.), entered April 13, 2006, which granted petitioner's motion to vacate the portion of an arbitration award which awarded respondent $48,000 on his counterclaim, affirmed, without costs.

The arbitrators awarded Lehman Brothers $122,000 for Cox's margin debt plus interest. Given the necessary underlying determination that Lehman Brothers was entitled, as it had claimed from the outset, to the full claimed margin debt plus interest, and given this Court's prior determination (see Cox v Lehman Bros., Inc., 15 AD3d 239 [2005]), the grant of Cox's counterclaim was not within the arbitrators' authority.

It is established, as a matter of law, that Lehman Brothers had properly held the Borealis shares, had properly sold a portion of them to cover some of Cox's margin calls, and properly continued to hold the remaining 81,700 shares as collateral. In affirming the rescission of the settlement agreement, this Court observed that doing so would restore the parties to "the status quo ante *without prejudice*," and that there was no indication that the error Lehman Brothers made in drawing up that agreement was either in bad faith or intentional (*id*. at 239 [emphasis added]). Indeed, this Court remarked, in response to Cox's complaints regarding the additional costs caused by the need for litigation, that he could have avoided litigation by accepting Lehman Brothers' offer of the full amount of shares remaining, the correct number of which he was at all times fully aware from the statements of account he had been sent regularly.

All of the foregoing issues were raised and addressed in the course of the prior litigation. Yet, Cox brought a new counterclaim in the arbitration that followed, asserting that:

"9. Respondent has suffered damages as a result of Claimant's failure to negotiate in good faith and made material misstatements resulting in damages to Respondent.

"10. Respondent has suffered damages as a result of Claimant's unlawful possession of Respondent's assets including but not limited to loss of interest on the assets, loss of investment opportunity, loss of capital and attorneys fees in excess of $100,000."

These allegations are contradicted, disproved, or preempted by determinations previously made. The claimed lack of good faith is contradicted by this Court's prior ruling, as is the claimed "unlawful possession" of Cox's assets; indeed, the portion of the award in favor of Lehman Brothers necessarily establishes that it did nothing unlawful in respect to Cox's shares. The only claimed "misstatement" was the accidental

misstatement in the settlement agreement that Lehman Brothers would return 112,400 shares, when in fact only 81,700 shares remained in its possession. The only means by which this misstatement damaged Cox was that it necessitated the continued legal battle, since Cox was unwilling to accept the clearly *intended* terms of the settlement agreement, namely that he pay $60,000, and Lehman Brothers turn over all Cox's shares of Borealis stock remaining in its possession.

The dissent reasons that we, like the motion court before us, lack proof of exactly what evidence was before the arbitrators in support of Cox's counterclaim. However, Lehman Brothers asserted in its petition, and asserts now, that the only evidence presented by Cox in support of his counterclaim was that related to the events of negotiating the settlement agreement. In his cross motion in opposition, Cox failed to point out anything to the contrary. Although he states in his reply brief that he raised before the arbitrators a claim of improper handling of his account, he provides not a single specific. Accordingly, contrary to the dissent's position, it *can* be said that there was no evidentiary support for a viable claim by Cox separate and apart from the attempted settlement and the error in inserting in the draft agreement the number of shares remaining in Lehman Brothers' possession. Cox failed to provide enough information to establish the existence of even a barely colorable justification for the counterclaim award.

Nor do we believe that by moving before the NASD for dismissal of the counterclaim, based upon its transparent lack of validity, Lehman Brothers in any way waived the present argument.

It is true that a party seeking to vacate an arbitration award is faced with a heavy burden (*see* CPLR 7511 [b] [1]). But, upon a demonstration of a complete absence of any support, evidentiary or even theoretical, that burden is satisfied. Concur— Saxe, Gonzalez and Kavanagh, JJ.

Andrias, J.P., and Williams, J., dissent in a memorandum by Andrias, J.P., as follows: After Lehman Brothers commenced an arbitration before the American Stock Exchange to collect a margin debt of $65,791.96 from respondent Cox, the parties stipulated that upon payment of $60,000 Lehman Brothers would "remit" 112,400 shares of Borealis stock to Cox. However, after Cox paid the $60,000 settlement, Lehman Brothers discovered that there were only 81,700 shares in his account, the remainder having previously been liquidated to cover certain margin calls. Cox then brought an action to enforce the stipulation and Lehman Brothers successfully counterclaimed for re-

scission of the stipulation on the basis of unilateral mistake. In affirming, we found no indication that Lehman Brothers lacked good faith, it simply appearing that the paralegal assigned to review the stipulation for factual error relied on the wrong account statement in coming up with the number of shares. Thus, we remanded the controversy to arbitration where Cox could pursue his claim that Lehman Brothers is not entitled to the interest it sought (*see Cox v Lehman Bros., Inc.*, 15 AD3d 239, 240 [2005]).

Lehman Brothers then commenced an arbitration before NASD seeking $65,791.95 plus interest from December 10, 1997, costs and attorneys fees. Cox answered and counterclaimed, alleging

"9. Respondent [Cox] has suffered damages as a result of Claimant's [Lehman Brothers's] failure to negotiate in good faith and made material misstatements resulting in damages to Respondent.

"10. Respondent has suffered damages as a result of Claimant's unlawful possession of Respondent's assets including but not limited to loss of interest on the assets, loss of investment opportunity, loss of capital and attorneys fees in excess of $100,000."

Lehman Brothers moved before the arbitrators to dismiss the "material misstatement", the "unlawful possession", and the "failure to negotiate in good faith" counterclaims. Cox opposed, arguing that the issues of Lehman Brothers's negligence in handling the settlement between the parties and its improper handling of his account were to be determined by the arbitrators. After due deliberation, the panel denied the motion and, after a hearing, awarded Lehman Brothers $122,000 in compensatory damages; directed Lehman Brothers to deliver all shares of Borealis held in any of Cox's accounts, but in no event, less than 81,700 shares, including any and all dividends or stock splits, if any, since January 1, 1992; and awarded Cox $48,000 in compensatory damages.

Lehman Brothers then successfully sought a judgment pursuant to CPLR 7511 (b) (1) (iii) vacating the award to Cox on the ground that the arbitrators exceeded their authority. It argued, as it does on appeal, that the arbitrators "had no right or authority to go back and give an award of $48,000 on a stipulation which had been told to them was strictly out-of-bounds" by the courts. However, contrary to the IAS court's finding in favor of Lehman Brothers, the issues raised in respondent's counterclaims before the arbitrators did not necessarily arise out of the negotiation of the stipulation of settlement subsequently vacated by the courts on the ground of unilateral mistake.

In reviewing the counterclaims, it is not clear that the only basis for all the assertions therein is the stipulation. Notably, the counterclaims included a claim for the "unlawful possession" of Cox's assets, the specifics of which might or might not pertain to the stipulation (the counterclaims are wholly devoid of facts). Further, the arbitration panel did not set forth any factual basis for its award on the counterclaims.

Neither a transcript of the arbitration proceedings nor, apparently, the tapes of those proceedings were before the IAS court when it rendered its decision. Thus, the court had no way of discerning the nature of the claims actually made by Cox at arbitration. While Lehman Brothers asserted that Cox's counterclaims stemmed solely from the stipulation of settlement, there was no convincing evidence to that effect submitted in support of its petition. I also note that, although not raised by the parties, Lehman Brothers's motion to dismiss the counterclaims before the arbitrators was not based on any claim that consideration of such counterclaims would be outside their authority. Thus, by proceeding to arbitration on these issues without court intervention, it would seem that Lehman Brothers waived its current argument (see CPLR 7503 [c]). In any event, given the heavy burden that Lehman Brothers faced when moving to vacate an arbitration award (see Scollar v Cece, 28 AD3d 317 [2006]), it cannot be said that its petition and supporting papers, which were wholly devoid of evidentiary support for its allegations, could serve as a basis for vacatur of the arbitrators' award in favor of Cox. Indeed, the motion to dismiss the counterclaims and the responding papers illustrate a potential basis for the award independent of the stipulation.

Accordingly, inasmuch as Lehman Brothers has not met its burden, the order and judgment (one paper) should be reversed, the petition denied in all respects and respondent's cross motion to confirm the arbitrators' award granted.