Tatum v Jack (2024 NY Slip Op 50244(U))

[*1]

Tatum v Jack

2024 NY Slip Op 50244(U)

Decided on March 8, 2024

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 8, 2024
Civil Court of the City of New York, Kings County

Kim A. Tatum as Trustee of the Charlie G Tatum and 
 Kim A. Tatum Living Trust Dated August 2nd, 2005, Petitioner,

against
Marva Jack, John Doe, Jane Doe, Respondents.

Index No. LT-310915-22

Mizrahi Law Offices, L.L.C. (Robert Mizrahi, Esq.), for the petitioner
Brooklyn Legal Services (Ali Hassan, Esq.), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc No.: 16-21.
PROCEDURAL POSTURE AND BACKGROUND
This is a nonpayment proceeding which was discontinued by a two-attorney stipulation dated July 19, 2023. (NYSCEF Doc No. 15.) The stipulation anticipated the collection of approved Emergency Rental Assistance Program ("ERAP") funds and Department of Social Services ("DSS") assistance checks. Subject to collection, it was agreed that respondent would have a credit of $3,359.70 to be carried forward into August 2023. (Id. ¶ 3 ["All rent due and owing through July 31, 2023 is hereby satisfied."]) The DSS checks in the amount of $12,165.02 were cashed in August 2023, and, eventually, ERAP was paid in the amount of $10,277.12 and credited in July 2023 on the ledger. (NYSCEF Doc No. 16, motion at 7-20, ledger.)
Now before the court is petitioner's motion to vacate the July 19, 2023 stipulation. (NYSCEF Doc No. 16, motion [sequence 4].) Respondent has opposed petitioner's motion and cross-moved for attorney's fees for having to oppose petitioner's motion pursuant to 22 NYCRR § 130.1-1. (NYSCEF Doc No. 18, motion [sequence 5].) Petitioner has cross-cross moved for fees. (NYSCEF Doc No. 20, motion [sequence 6].)
Petitioner's attorney argues that a mutual mistake was made at the time the stipulation was executed and that the amounts set forth in the July 19, 2023 discontinuance stipulation were incorrect. Rather than a credit of $3,359.70 as of the date of the stipulation assuming receipt of the anticipated monies, petitioner now claims that respondent actually owed over $10,000 after [*2]the stipulated monies were negotiated.[FN1]
Petitioner's attorney points to an email exchange between the parties two days after the stipulation, which he argues confirms that respondent knew of an error. (NYSCEF Doc No. 20, notice of cross-motion at 6, email from Ali Hassan to Robert Mizrahi, dated July 21, 2023.) Respondent objects to this exhibit as violative of CPLR § 4547 (Compromise and offers to compromise), an objection that petitioner does not address. Respondent's attorney argues that, at best, a unilateral mistake was made by petitioner's attorney, and that petitioner's attorney has failed to meet the high standard applicable to motions to vacate a two-attorney stipulation. (NYSCEF Doc No. 19, respondent's attorney's affirmation ¶ 28.)
The court attempted for some time to facilitate a settlement of the motions on terms mutually agreeable to both parties. However, the court's entreaties were ultimately not entertained. Decision was reserved on March 6, 2024.
APPLICABLE LAW
It is well-settled that "stipulations of settlement are favored by the courts and not lightly cast aside." (See Hallock v State of New York, 64 NY2d 224, 230 [1984] [internal citation omitted].) Adherence to this rule not only allows efficient dispute resolution but maintains integrity of the litigation process. (Id. at 230; Campbell v Bussing, 274 AD 893 [2d Dept 1948] [holding that a stipulation "will not be destroyed without a showing of good cause therefor, such as fraud, collusion, mistake, accident, or some other ground of the same nature . . . ."]) However, courts maintain the discretionary power to relieve a party of an agreement "[w]here both parties can be restored to substantially their former position" and "it appears that either party has inadvertently, inadvisedly or improvidently entered into an agreement which will take the case out of the due and ordinary course of proceeding in the action, and in so doing may work to his prejudice." (In re Frutiger's Estate, 29 NY2d 143, 150 [1971] [internal citations and quotation marks omitted].) However, "the discretion of a court is not that closely confined. The court should act if it appears that the stipulation is unduly harsh or unjust and the parties may be returned to their former status." (144 Woodruff Corp. v Lacrete, 154 Misc 2d 301, 302 [Civ Ct, Kings County 1992].)
The Appellate Term in both the First and Second Judicial Departments has routinely held that stipulations should be vacated where a previously unrepresented tenant obtains counsel and demonstrates potentially meritorious defenses. (See e.g. Chauncey Equities, LLC v Murphy, 62 Misc 3d 141[A], 2019 NY Slip Op 50067[U], *1 [App Term, 2d Dept 2019] [reversing lower court's denial of tenant's motion to vacate stipulation, where "tenant showed that he had entered into the stipulation while appearing pro se and having been evicted the previous day, and that he had inadvertently waived several meritorious defenses, and he made a prima facie showing of a rent overcharge and a breach of the warranty of habitability (internal citations omitted)."]; 130 E. 18th, L.L.C. v Mitchel, 50 Misc 3d 55, 2015 NY Slip Op 25407 [App Term, 2d Dept 2015], citing Tabak Assocs. LLC v Vargas, 48 Misc 3d 143[A], 2015 NY Slip Op 51314[U] [App Term, 1st Dept 2015]; see also 2701 Grand Assn. LLC v Morel, 50 Misc 3d 139[A], 2016 NY Slip Op 50163[U] [App Term, 1st Dept 2016]; Berco Realty LLC v Thiombiano, 45 Misc 3d 129[A], 2014 NY Slip Op 51564[U] [App Term, 1st Dept 2014]; Striver 140 v Cruz, 1 Misc 3d 29, 2003 [*3]NY Slip Op 23780 [App Term, 1st Dept 2003].) Here, however, petitioner was represented by counsel.
Where both parties are represented by counsel, courts will find that vacatur is justified in some circumstances. (See e.g. Gould v Bd. of Educ. Of Sewanhaka Cent. High School Dist., 81 NY2d 446, 453 [1993], citing Rosenblum v Mfrs. Trust Co., 270 NY 79 [1936] [vacating an agreement to resign a tenured teaching position where both parties were operating under the mutual mistake that there was no protected property interest at stake]; Chong King Enters., Inc. v Nunez, 2003 NY Slip Op 50030[U] [App Term, 1st Dept 2003] [holding that vacatur of a stipulation was warranted where shortly after the stipulation was executed, DHCR issued a report of maximum rent which was not available prior to the execution of the stipulation and which set the rent at a lower amount]; Bridgeview II, LLC v Mars, 51 Misc 3d 29 [App Term, 2d Dept 2015] [vacating a stipulation where both parties were unaware that the agreed upon rent did not comply with federal statutes]; 1796 Nostrand Ave., LLC v Gabriel, 47 Misc 3d 141[A], 2015 NY Slip Op 50618[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015] [reversing the lower court's decision to uphold a tenant's agreement to vacate in a summary holdover proceeding premised on the alleged expiration of a month-to-month tenancy in a purportedly unregulated apartment where DHCR subsequently ruled that the premises was rent regulated]; 1st Prop. Clinton Realty, LLC v Sidibe, NYLJ 1202773822650, *1 [Civ Ct, Bronx County 2016] [vacating a stipulation to which tenant would not have consented had original counsel properly advised her of her available defenses].)
Stipulations can be vacated on the basis of mutual mistake if a party can show that the mutual mistake existed at the time of the stipulation, and that the mistake is so substantial that the stipulation does not represent a true meeting of the minds. (Litvinov v Hodson, 74 AD2d 1884 [4th Dept 2010, Sudder, J. and Smith, J., dissenting], citing Carney v Carozza 16 AD3d 867 [3d Dept 2005]; Gro—Wit Capital Ltd v Obigor LLC, 33 AD3d 859 [2d Dept 2006]). In such a case the party seeking vacatur of the stipulation bears the burden of proving the mistake by clear and convincing evidence (Vermilyea v Vermilyea, 224 AD2d 759, 76-761 [3d Dept 1996].) However, courts will decline to vacate two-attorney stipulations where, had the moving party exercised ordinary care, the mistake could have been avoided. "Where a mistake of fact is attributable to the negligence or carelessness of the party seeking to vacate a stipulation, and there has been no fraud or deceit on the part of the other party thereto, such a mistake will not constitute a basis to set aside the agreement." (Waterside 1 LLC v Christian, 13 Misc 3d 138[A], 2006 NY Slip Op 52229[U], *2 [App Term, 2d Dept, 2d & 11th Jud Dists 2006] [internal citation omitted] [affirming denial of landlord's motion to vacate a stipulation because it "had an opportunity to ascertain whether the rent had been restored prior to the commencement of the proceeding and the execution of the stipulation of settlement, it cannot avoid the consequences of its own carelessness by seeking to have the stipulation vacated."]; see also 765 Amsterdam Ave. LLC v Maynard, 26 Misc 3d 133[A], 2010 NY Slip Op 50076[U] [App Term, 1st Dept 2010] [holding that a stipulation should not be vacated where the tenant derived substantial benefit from the bargain and waited until the end of the stay period to move to vacate stipulation]; Mazzola v CNA Ins. Co., 145 Misc 2d 896, 901 [Civ Ct, Queens County 1989] [a stipulation will not be vacated based upon a unilateral mistake where inquiry or ordinary care would have elicited the correct information and revealed the mistake and both parties were of equal bargaining power].)
However, "[a] unilateral mistake can be the basis for rescission if failing to rescind an [*4]agreement would result in unjust enrichment of one party at the expense of the other, and the parties can be returned to the status quo ante without prejudice (emphasis added)." (Cox v Lehman Bros., Inc., 15 AD3d 239, 239 [1st Dept 2005] [internal citations omitted]; see also Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC, 74 AD3d 516, 520 [1st Dept 2010] [contract voided where plaintiff "would be unjustly enriched in that undisputedly plaintiff did not intend those terms."]) In Cox, the court vacated an agreement where a paralegal (albeit not an attorney) relied on the wrong account when reviewing a stipulation for "factual error." (Cox, 15 AD3d at 240.) There, the court found that voiding the agreement and "[r]emanding the controversy [for further litigation] . . . effectively restores plaintiff to the status quo ante." (Id.) In Sheridan Drive-In, Inc. v. State, 16 AD2d 400, 405 (4th Dept 1962), the court allowed the claimant to rescind an agreement, "in order to prevent unjust enrichment, whether the mistake was induced by the State's misrepresentations or was merely known to the State's agents." (Id. at 401.) The Sheridan court further observed that a unilateral mistake may result in recission of a contract "in order to prevent an unjust enrichment of the other party. A mistake not mutual but only on one side may be ground for rescinding but not for reforming a contract." (Id. at 405 [internal citations and quotation marks omitted].) As observed by the Court of Appeals in Sharp v Kosmalst, 40 NY2d 119 (1976), "A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust. . . . It is a conclusion reached through the application of principles of equity." (Id. at 123.)[FN2]

DISCUSSION
Unlike the cases above where two-attorney stipulations have been vacated based on mutual mistake, petitioner is represented by the same attorney who represented her when the stipulation was executed, and respondent's attorney avers that he was not operating under mistaken facts at the time the stipulation was executed. Petitioner's attorney relied on a rent ledger provided to him by his client. Moreover, petitioner's attorney has not proven by "clear and convincing evidence" that there was a mutual mistake at the time the stipulation was executed which must be undone. There is no admissible confirmation from respondent's attorney to support petitioner's contention that the parties were mutually mistaken at the time the stipulation was so ordered. (CPLR 4547.)
The court disregards but does not condone what it perceived as respondent's attorney's uncompromising stance during the lengthy settlement conference when the court was, as it must, making efforts to facilitate the resolution of an intractable disagreement in a reasonable manner. The court further notes that burning bridges with adversaries, especially in Housing Court, is never productive. However, the court also notes respondent's attorney is, after all, correct that "[a]t best, [p]etitioner has proven that there was a unilateral mistake. [Petitioner] has not proven [*5]that [r]espondent or her attorneys relied on that same mistake at the time the stipulation was entered into." (NYSCEF Doc No. 21, respondent's attorney's affirmation ¶ 17.) It is true that petitioner carelessly relied on an incorrect breakdown. Respondent's arguments are cogent and effectively presented both in writing and orally. In a time when legal services providers are stretched to capacity, it is counter-productive to spend hours litigating the veracity of a two-attorney stipulation. The time would be better spent representing other tenants who are eligible for Universal Access to Counsel.
In a similar vein, the court should not be burdened considering contentious arguments between the same two attorneys regarding an avoidable mistake. The court's efforts are more importantly expended ensuring that self-represented litigants who are not fortunate enough to retain a free lawyer understand the nature of the agreements into which they are entering. In a court with too many cases, "swift resolution of cases and ensuring finality in the court process" is of utmost importance. (Shalimar Leasing, LP v Medina, 73 Misc 3d 22, 25 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists, Weston, J., dissenting].) Unquestionably, petitioner must do better.
However, petitioner now claims that thousands of dollars were actually owed through the date of the July 2023 stipulation—even crediting all the anticipated payments therein—and that respondent was not in actuality entitled to a credit of several thousand dollars. It is not controverted that petitioner's attorney reached out via email to respondent's attorney just two days after the stipulation was so ordered to discuss the error (although the substance of those communications is inadmissible). At oral argument, petitioner's attorney repeatedly advanced that he had emailed respondent's attorney immediately to discuss modification of the agreement. Respondent's attorney did not dispute this, relying instead on the hallowed nature of negotiated settlements between parties of equal sophistication and bargaining power. This is a position with which the court generally agrees, but the court also believes there are circumstances where equity and fairness must intervene.[FN3]

While respondent's attorney advances that his client "relied" on petitioner's error for months, it is difficult to conceive that a counselor of respondent's attorney's competence did not apprise his client of the controversy; and no affidavit from respondent is provided attesting to the particulars of her purported detrimental reliance. Moreover, the court is not convinced that respondent's attorney did not have some knowledge that the agreement did not comport with petitioner's true intent, even if this was not apparent until 48 hours after the stipulation was executed and even if there was disagreement as to the degree of the error. This court has previously upheld stipulations under protest from landlords where the amount in dispute was nominal. However, in this court's opinion, there exists a material error of some not insignificant magnitude in the July 19, 2023 stipulation that equity militates be remedied. Here, it is possible to return the parties to the status quo ante, and, under the facts and circumstances discernible herein and for the reasons set forth above, the court will exercise its discretion to vacate the [*6]stipulation and send the parties to trial.
Accordingly, it is
ORDERED that petitioner's motion to vacate the stipulation of settlement so-ordered on July 19, 2023 is GRANTED; and it is further
ORDERED that any additional motions by either party must be served and filed by March 20, 2024; and it is further
ORDERED that both parties' respective motions for fees, costs, and sanctions pursuant to 22 NYCRR 130-1.1 are DENIED.
Petitioner shall serve respondent with a copy of this decision and order with notice of entry.
The parties are to appear in room 509, Part G, of the Kings County Housing Court on March 29, 2024 at 9:30 for trial or motion practice should a motion be filed on or before March 29, 2024.
This constitutes the decision and order of the court.
Dated: March 8, 2024
New York, NY
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:The court arrives at this figure from the rent ledger attached to petitioner's motion by taking the "balance due" in August 2023 when all anticipated payments were credited, and subtracting an almost $6000 unexplained carry forward balance. NYSCEF Doc No. 16 at 7-20, rent ledger.

Footnote 2:Conversely, courts have declined to rescind an agreement when enforcement will not result in unjust enrichment. See Weissman v Bondy & Schloss, 230 AD2d 465, 469 (1st Dept 1997) (enforcing a stipulation where plaintiff would not be unjustly enriched); Green v M.S. Hous. Assoc., 2009 NY Slip Op. 51233 (U), *3 (adhering to stipulations on motion to vacate because, in part, "enforcing the stipulations will not in unjust enrichment" (emphasis added) 24 Misc 3d 1202 (A); OUB Ct. Hous. Co., Inc. v Alston, 70 Misc 3d 1219 (A), 2021 NY Slip Op 50163 (U) (Civ Ct, Bronx County 2021) ("[T]here was no unjust enrichment of respondent at petitioner's expense that should be remedied by equity (emphasis added).")

Footnote 3:An adage that every stakeholder in Housing Court can take to heart is that "[p]rofessional courtesy" should not be viewed as a "foreign currency." In re Will of Davey, 27 Misc 3d 182, 185 [Sur Ct, Madison County 2010]; see also Hon. Mark D. Fox, Michael L. Fox, Civility in Litigation — A Path to Winning, 85 NY St BJ 30, 32 (Aug. 2013) ("civility in litigation really can be the path to effective advocacy - and potentially to a sought-after victory.")